**Emir A. ZIKRIA, and Khalida B. Zikria, Plaintiffs,**

v.

**William E. WILLIAMS, Acting Commissioner of Internal Revenue Service, Thomas Davis, District Director of the Internal Revenue Service, and Leonard C. Russo, Revenue Agent, Internal Revenue Service, Defendants.**

Civ. A. No. 81–250.

United States District Court,
W. D. Pennsylvania.

March 5, 1982.

Richard H. Martin, Pittsburgh, Pa., for plaintiffs.

Stephen W. Laramore, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., for defendants.

## MEMORANDUM

McCUNE, District Judge.

This is an action brought by taxpayers, seeking to enjoin the IRS from collecting taxes and penalties assessed against them for the years 1973 and 1974. The case comes before us now on cross-motions for summary judgment. In accordance with Federal Rule of Civil Procedure 56(c), we proceed to examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," to determine whether there is any genuine issue of material fact and whether either party is entitled to a judgment as a matter of law.

During the years 1973 and 1974, the Zikrias lived at 1464 Inverness Street, Pittsburgh, Pennsylvania. In 1977 they moved to 327 Guys Run Road, Cheswick, Pennsylvania, where they currently reside. On December 31, 1979, the IRS issued a Notice of Deficiency with respect to the Zikrias' tax returns for 1973 and 1974. The Notice was mailed to 1464 Inverness Street, the address listed on the returns in question. At the time the Notice was mailed, the IRS had actual knowledge of Zikrias' present address at 327 Guys Run Road. This is reflected in the tax returns filed in the years 1977 through 1979, and various correspondence from the IRS relating to those returns. (See Plaintiffs' Answers to Defendants' First Set of Interrogatories, No. 5). It also appears that two members of the examination division, investigating these later returns, were aware of the 327 Guys Run Road address. (See Defendants' Answers to Interrogatories, Nos. 5 and 6).

Zikria had filed a change of address form with the Post Office in April of 1979, listing the new address at 327 Guys Run Road. Post Office documents show that the Notice, mailed on December 31, 1979, to the 1464 Inverness Street address was forwarded to 327 Guys Run Road on January 4, 1980. (See Affidavit of Ray Merisko). Documents from the Cheswick Post Office show that the Notice was not claimed within 15 days and was returned to the IRS on January 21, 1980, marked "Unclaimed." These dates substantiate the description of standard Post Office procedure contained in the affidavit of Kenneth Wright, that if a certified letter is not delivered because there is no one available to sign for it, a notice is left at the address, followed by another notice 5 days later, followed by return to the sender after 10 more days.

There is no proof in the file that the Zikrias received actual notice that a Notice of Deficiency had been mailed, until August 13, 1980, when they received a letter from the IRS informing them that the notice had been sent and that because there had been no petition filed with the Tax Court within 90 days, the tax had been assessed.

The general rule regarding injunctions against the collection of a tax is contained in 26 U.S.C. § 7421(a). "Except as provided in Sections 6212(a) and (c), 6213(a)... no suit for the purpose of restraining the collection of any tax shall be maintained in any court by any person..." Section 6212(a) provides that "[i]f the Secretary determines that there is a deficiency in respect of any tax... he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." Section 6212(c) provides that "[if] the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in Section 6213(a)," the Secretary may not impose any additional deficiency with respect to those same years. Finally, Section 6213(a) provides that within 90 days after the notice of deficiency authorized in Section 6212 is mailed, the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. It further provides that no assessment and no levy to collect a deficiency shall be made until such notice [as authorized in Section 6212] has been mailed, nor shall such action be taken during the 90 days allowed for petition to the Tax Court, nor if a petition has been filed, until the decision of the Tax Court has become final. Section 6213(a) then specifically provides that despite Section 7421(a), assessment or levy may be enjoined during the period of prohibition described above.

One further statutory section of importance in this case is Section 6212(b). That Section provides that notice of a deficiency "if mailed to the taxpayer at his last known address, shall be sufficient ... even if such taxpayer is deceased, or is under a legal disability, or in the case of a corporation, has terminated its existence."

The plaintiffs argue that Section 6212(b) requires the IRS to mail the deficiency notice to the taxpayer's last known address; that because the IRS had actual knowledge of the plaintiffs' current address, the mailing of the Notice to the prior address is invalid; and that, therefore, the IRS should be enjoined from proceeding with the as-sessment or levy. Stated in this manner, the complaint is clearly a proper one for an injunction. Although Section 7421 states a general prohibition on actions to enjoin the collection of taxes, Section 6213(a) "permits the taxpayer to obtain an injunction against the assessment or levy of a deficiency in the absence of the requisite deficiency notice and opportunity to petition the Tax Court." *Clark v. Campbell*, 501 F.2d 108, 112 (5th Cir. 1974). The Zikrias' claim for an injunction, then, initially turns on whether a proper notice of deficiency was mailed.

The plaintiffs cite a number of cases in support of their contention that no proper deficiency notice was mailed by the IRS. The case most similar to this one on its facts is *Metas v. Gilmore*, 79–1 U.S.T.C. § 9297 (E.D.Pa.1979). In that case, the taxpayer brought an action to enjoin enforcement of a tax lien for the year 1973. The taxpayer's 1973 return showed his then-correct address and the Notice of Deficiency was mailed there. Subsequent tax returns had showed the taxpayer's new address, and the taxpayer had advised the intelligence division of the IRS of his new address in connection with the investigation of his later returns. The Notice of Deficiency mailed to the taxpayer's old address was returned undelivered, and there was no effort made by the IRS to verify the correct address. The District Court held that because the notice was not sent to the last known address, as required by statute, the notice and lien were invalid and the IRS would be enjoined from relying on them.

To the same effect is *Wood v. United States*, 79–1 U.S.T.C. § 9119 (D.Idaho 1978), where the notice mailed to the old address was never received by the taxpayer and returned to the IRS, which took no further steps despite actual knowledge of the new address. Saying that the IRS should have mailed the notice to the taxpayer's new address, the District Court enjoined the IRS from relying on the notice as the basis for an assessment.

Other cases cited by the plaintiffs differ from the present case procedurally, in that

the taxpayers in those cases had filed petitions with the Tax Court, albeit beyond the 90-day limit, and had their petitions dismissed as being out of time. In those cases, the IRS had sent the notice of deficiency to an incorrect address, when under the circumstances, they should have known the correct address. Nevertheless, the taxpayers, at some point, received actual notice of the deficiency determination. The courts in these cases held that the time period for filing the Tax Court Petition, rather than running from the date the notice was mailed, should run from the date that actual notice was received. *Crum v. Commissioner*, 635 F.2d 895 (D.C.Cir.1980); *Johnson v. Commissioner*, 611 F.2d 1015 (5th·Cir. 1980); *Kennedy v. United States*, 403 F.Supp. 619 (W.D.Mich.1975), *aff'd* 556 F.2d 581 (6th Cir.).

The defendants, in the first instance, rely on cases which hold that the taxpayer's failure to claim the certified letter containing the notice of deficiency is insufficient to defeat a proper mailing. *Cohen v. United States*, 297 F.2d 760 (9th Cir. 1962); *Brown v. Lethert*, 360 F.2d 560 (8th Cir. 1966); *Lewin v. Commissioner*, 569 F.2d 444 (7th Cir. 1978). They then point out that the notice in this case, although improperly addressed, was, in fact, promptly delivered to the taxpayer's last known address. This fact, they argue, distinguishes this case from those relied on by the plaintiffs. The essence of the defendants' position is that the taxpayers did not receive actual notice because they failed to claim the certified letter—their own fault—not because the letter was initially addressed wrong—the IRS's fault.

The leading Third Circuit case on the interpretation of Section 6212(b)(1) is *Delman v. Commissioner*, 384 F.2d 929 (1967). In *Delman*, the deficiency notice was sent to the taxpayers at the address of their accountants with a copy mailed to their attorney. The attorney forwarded a copy of the notice to the taxpayers. The Tax Court petition was filed within 90 days of the time when the taxpayers received the copy from their attorney, but more than 90 days from the time the notice was mailed.

The taxpayers argued that the notice was invalid because it was not mailed to their last known residence address and that mailing to the last known address is essential to the jurisdiction of the Tax Court.

The court discussed at length the legislative history and purpose of Section 6212(b)(1) before concluding that that Section was not applicable to the case at hand. Their analysis of the "last known address" section is thus dictum, but it is the best discussion available of the meaning to be given to the statute. In the view of the Circuit Court of Appeals, "the purpose of the notice of deficiency is to give the taxpayer notice... (citations omitted).... By using the phrase 'last known address' Congress must have intended that notice be sent to that address where the Secretary (or his delegate) reasonably believed the taxpayer wished notice to be sent." 384 F.2d at 932.

Standing alone, this quote lends support to the plaintiffs' argument and, in fact, is cited in their brief. However, the court continued that "Section 6212(b)(1) was intended to apply only in situations where the Secretary did not have the taxpayer's correct address because of the failure or inability of the taxpayer to notify him of the change. This Section was enacted to protect the Secretary in this circumstance and *is not a sword to be used by the taxpayer* ... [A]lthough other means may be equally suitable and, perhaps, even better, the Government is protected if the notice is sent to the last known address." 384 F.2d at 932 (emphasis supplied). This lends some support to the defendants' argument. It implies that mailing to the last known address is not so much a requirement for every deficiency notice, as it is a legislative presumption of validity in specific instances. In other instances, the validity is to be determined by the facts of each particular case.

This analysis is supported by further language in the opinion. "...[W]e think it is clear that Congress neither in words nor in purpose sought to create a mandatory ad-

dress to which notices of deficiency must be sent. Rather it attempted to preserve the legislative scheme of notices of deficiency and tax court review." 384 F.2d at 933. The court did, however, distinguish the general fact situation with which we are faced, so that it might be argued they did intend to apply Section 6212(b)(1) in cases like this. "This is not an instance where the service failed to notify the taxpayer because of an unreported address *or because of a failure by the Service to heed a change in address* with the result that the taxpayer was not notified." 384 F.2d at 933 (emphasis supplied).

█ In summary, there is support in the *Delman* opinion and in cases from various circuit and district courts for both plaintiffs' and defendants' arguments. We believe, however, that the better analysis lies on the side of the government. Simply put, the reasoning is this: Section 6212(b)(1) was intended to create an irrebuttable presumption of validity for notice mailed to the last known address in circumstances where the IRS had no reason to know of a change of address. In all other cases, the action of the IRS must be judged according to the circumstances, keeping in mind that the purpose of the statute is to provide the taxpayer with notice of the determination of a deficiency. In circumstances where the notice is sent to the wrong address *and never delivered,* the statutory purpose is not served and it would be manifestly unfair to enforce the time limit strictly against the taxpayer; thus, the result in the cases cited by the plaintiffs which extended the time for filing a Tax Court petition by marking it from the receipt of actual notice. In circumstances where the notice is sent to the wrong address *but delivered to the taxpayer in due course,* there is no prejudice to the taxpayer and the notice is valid. *Whitmer v. Lucas,* 53 F.2d 1006 (7th Cir. 1931); *Wright v. Commissioner,* 101 F.2d 309 (4th Cir. 1939). The instant case, then, is similar to the second situation except for the fact that the taxpayer did not receive the delivery. In cases where the initial mailing is to the correct address, but the taxpayer does not

accept the certified mail, the notice is nevertheless deemed valid. *Cohen v. United States, supra; Brown v. Lethert, supra; Lewin v. Commissioner, supra.* The same result should obtain here.

█ This case can be distinguished from the *Metas* and *Wood* cases by noting that in each of those cases the court found that the notice was returned *undelivered.* In the instant case, the notice was returned *unclaimed.* This may appear to be a distinction without a difference, but in practical effect there is a substantial difference. A notice returned undelivered, as in *Metas* and *Wood,* might prompt the IRS to recheck its files to determine if the notice was sent to the right address. In fact, both courts in those cases made the point that the IRS took no further steps to verify the address after receiving the returned notice. Here, when the notice was returned unclaimed, the documents from the Post Office revealed that the letter had already been forwarded to the new address. Any rechecking of its files by the IRS would have been pointless, as it could only reveal that the notice should have been directed to the new address. Because the notice had, in fact, been so directed, with no substantial delay, and remained unclaimed, it could reasonably be assumed that a notice originally mailed to the new address would have met with the same fate. To borrow a phrase from another field of law, the proximate cause of the lack of actual notice was the plaintiffs' failure to claim the certified mail, not the incorrect address.

Applying the foregoing analysis to the undisputed facts as revealed in the record and affidavits, we find that the defendants are entitled to judgment as a matter of law.