**David A. GIBSON and Jean E. Jaros (formerly Jean E. Gibson), Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CV 90–5390 SVW (GX).**

United States District Court, C.D. California.

April 4, 1991.

Robert B. Martin, Jr., Martin & Hudson, Pasadena, Cal., for plaintiffs.

Mason C. Lewis, Asst. U.S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

WILSON, District Judge.

### INTRODUCTION

Plaintiffs filed this action to enjoin the Internal Revenue Service ("IRS") from collecting past due taxes, interest, and penalties allegedly owed by plaintiffs for the tax years 1980, 1981, and 1983. The basis for plaintiffs' action is that the IRS failed to provide the plaintiffs with proper notice of the deficiency prior to the running of the statute of limitations for the tax years at issue since it mailed the deficiency notice to an address other than the taxpayers' last known address. Further, since plaintiffs did not receive notice of the deficiency within 90 days of the IRS notice, they were not able to file a petition for redetermination in the Tax Court, which would have allowed them to contest the deficiency notice without payment of the deficiency and without risk of further accruals of penalties. Additionally, plaintiffs claim that the current sum due is in excess of their combined net worth and that they would suffer great hardship if forced to pay the tax and then seek a refund. Thus, plaintiffs claim that they have suffered irreparable injury such that their remedy at law is inadequate and that, therefore, they should be granted injunctive relief. This action was tried to the court on March 19, 1991.

### STATEMENT OF FACTS

Plaintiffs were husband and wife and filed joint tax returns in 1980, 1981, and 1983, the tax years for which the IRS recomputed their tax liability. The plaintiffs resided at 13557 Rose Street, Cerritos, California 90701 during those tax years and continued to reside there until approximately August 12, 1986. On that date, plain-

tiffs moved to a home at 18328 Summer Avenue, Artesia, California 90701. On January 26, 1987, plaintiffs filed a joint tax return for 1986, at the Fresno Service Center of the IRS, in which they listed their new Summer Avenue address.[1] On March 27, 1987, the Fresno Service Center of the IRS, having processed their return, sent the plaintiffs a refund check to their Summer Avenue address. On the same day, March 27, 1987, the IRS Audit Division office in Laguna Niguel, California, sent the plaintiffs by certified mail a statutory notice of deficiency for tax years 1980, 1981, and 1983. However, the deficiency notice was sent to the plaintiffs' old address on Rose Street. The statute of limitations for those tax years was to and did expire on April 15, 1987. In June, 1987, the plaintiffs separated and were subsequently divorced. Both plaintiffs have remarried.

On August 12, 1986, the plaintiffs had filed a change of address form with the Artesia–Cerritos Post Office, which served both their old and new homes. While no percipient witness testified at trial as to the path of the IRS notice, the IRS did offer the testimony of David Lopez, a postal employee, to establish the normal postal procedures for certified and forwarded mail. When the IRS notice was received by the local post office and distributed to the carrier for the Rose Street address, the carrier, knowing of the address change, would have sent the letter to Central Forwarding Unit at the Long Beach Post Office. The forwarding unit would then generate a change of address sticker with the plaintiff's new address and affix it to the IRS notice envelope. The letter would then be sent to the post office serving the new address. This procedure was almost certainly followed in this case since the IRS notice envelope contains a yellow sticker dated 3/31/87 with plaintiff's new address.[2]

1. On their return for 1986, the plaintiffs listed their street as "Summer Place" rather than "Summer Avenue." The discrepancy between "Place" and "Avenue" has played no part in the matters involved in this lawsuit. For the sake of clarity, the court will refer to the plaintiffs'

post-August 1986 address as the "Summer Avenue" address.

2. For purposes of the forwarding process, it is not important that the plaintiffs' old and new addresses were served by the same post office

According to David Lopez, the certified letter then would have been distributed to the carrier for the Summer Avenue address, who would have and apparently did attach a yellow Form 3849–A to the envelope. The markings on the Form 3849–A indicate to Mr. Lopez that the carrier attempted to deliver the IRS notice on April 1, 1987. Under normal procedures, the April 1, 1987 delivery attempt would have been made at plaintiff's new residence. Further, since no signature was obtained for the letter, the carrier would have left the other portion of the Form 3849–A at the plaintiff's home, thereby providing the plaintiffs with notice that certified mail was being held at the post office for pickup by them. The envelope markings indicate that a second delivery was attempted on April 8 with no success and that a second notice was left at the place of delivery. The markings on the envelope further indicate that the notice was returned to the IRS as sender on April 21 as having been unclaimed. David Gibson and Jean Jaros testified that they had no recollection of receiving a notice to claim certified mail at the post office in March or April of 1987. The IRS did not present any evidence that the plaintiffs were not being truthful. Further, since the portion of Form 3849–A normally left at the addressee's residence does not identify the sender of the certified mail, even if a notice to claim certified mail was left at plaintiffs' residence, it is unlikely that the plaintiffs would have known that the certified mail awaiting them at the post office was an IRS deficiency notice. Hence, plaintiffs would not have had any reason not to claim any such certified mail. Thus, the court finds that the plaintiffs never received the notices to claim certified mail.[3]

In September, 1987, the plaintiffs received a statement from the IRS for the deficiency plus interest and penalties. In October, 1987, plaintiffs received a certified letter from the IRS titled "Past Due—Final Notice (Notice of Intention to Levy)." While it is unclear what happened in the interim, plaintiff David Gibson was notified in June, 1990, that the tax refund due to him and his new wife for 1989 was being applied to his unpaid tax liability for 1980. David Gibson had his accountant contact the IRS, which then sent him a copy of the original notice of deficiency.

The plaintiffs' assets are not insubstantial. Plaintiff David Gibson earns approximately $72,000.00 per year and his current wife earns approximately $30,000.00 per year. He and his current wife purchased a single family home for $210,000.00 approximately two years ago. Of that $210,000.00, David Gibson and his current wife borrowed approximately $182,000.00. While David Gibson has made improvements to the house costing approximately $15,000, Mr. Gibson testified that similar homes in his neighborhood, with improvements such as those added to his current home, recently have been sold for approximately the same price for which he purchased his current home. Further, the Gibsons have a retirement account valued at about $65,000.00, from which David Gibson testified he could borrow half that amount subject to tax and interest forfeiture penalties. Further, as of July 31, 1990, David Gibson had $21,000.00 cash and approximately $25,000.00 worth of personal property including his car. Additionally, David Gibson testified that, prior to the plaintiffs' divorce, he had established a $50,000.00 unsecured credit line at a time when the plaintiffs' combined earnings were not much greater than the combined earnings of him and his current wife. On the other hand, in addition to his mortgage debt, David Gibson also had credit card and other liabilities of approximately $18,000.00. Further, David Gibson's accountant estimated that Mr. Gibson would need approximately $33,000.00 to pay taxes resulting from a forced liquidation of his assets and early distribution from his retirement plan.

Plaintiff Jean Jaros earns approximately $55,000.00 per year. Her current husband and his partner own a foundry that em-

since all mail forwarded from addresses in the area is processed at the Long Beach Central Forwarding Unit.

3. *See infra* note 7.

ploys 35 people. Jean Jaros testified that she took a distribution of $30,000.00 from her pension plan from a previous job sometime last year and that she gave the money to her husband to invest in the foundry.[4] Mr. Jaros testified that his initial investment in the foundry was approximately $150,000.00. The foundry is only a few years old and has sales of approximately $100,000.00 per month. However, Mr. Jaros testified that the foundry is barely breaking even, that any revenues generated in excess of expenses are reinvested in the business, and that the foundry has no line of credit. Further, Mr. Jaros does not draw any salary from the foundry as of yet. Since Mr. Jaros' investment was made prior to his marriage to plaintiff Jean Jaros, his interest in the foundry is his separate property under California law. Cal. Civ.Code sec. 5108. While his return on his separate property investment, even during marriage, remains his separate property, Mrs. Jaros does have a community property interest in the earnings of her husband even if they are reinvested in the foundry. *See Beam v. Bank of America*, 6 Cal.3d 12, 17, 490 P.2d 257, 98 Cal.Rptr. 137, 140–41 (1971) (income resulting from spouse's labor during marriage is community property). In the present case, the amount of Mr. Jaros' foregone earnings, and hence Mrs. Jaros' community interest, is speculative given the foundry's performance to date. Further, given the foundry's performance, the $30,000.00 debt owed to Jean Jaros is unlikely to be repaid in the near future, if at all. Jean Jaros testified that she and her husband pay all of their expenses from her salary, which is just under $4,600.00 per month before taxes. Those expenses include $1,100 per month in alimony payments to Mr. Jaros' former wife, $1,000 per month rent, $500 per month in car payments, and other daily living expenses. Jean Jaros testified that she and her current husband have no assets other than their personal belongings and their cars.

## DISCUSSION

■ Under 26 U.S.C. section 7421(a),[5] the Anti–Injunction Act, this court has no subject matter jurisdiction over actions to enjoin the assessment or collection of tax except as specifically provided in several other sections of title 26. One of the exceptions to the Anti–Injunction Act provides that the court may enjoin the collection or assessment of tax where the IRS has not satisfied its obligation to give the taxpayer a timely notice of deficiency. *Jensen v. Internal Revenue Service*, 835 F.2d 196, 198 (9th Cir.1987); 26 U.S.C. secs. 6212, 6213(a), 7421. Thus, where a taxpayer alleges a failure of notice, the court has subject matter jurisdiction over the suit unless and until the court determines that the IRS has satisfied its notice obligations. *Id.* However, even if the IRS failed to satisfy its notice obligations under sections 6212 and 6213, the taxpayer must establish the traditional prerequisites to equitable relief, *i.e.*, irreparable injury and inadequate legal remedy, before the court will enjoin the collection of tax. *Jensen*, 835 F.2d at 198.

### I. Notice.

■ Under section 6212(a) and (b), the IRS complies with its notice obligations by mailing the notice of deficiency by certified or registered mail to the taxpayer's last known address. In the present case, the plaintiffs filed their tax return for 1986 using their Summer Avenue address on January 26, 1987. On March 27, 1987, the IRS Fresno Service Center mailed the plaintiffs a refund check for 1986 to their Summer Avenue address. However, on that same day, March 27, 1987, the IRS Audit Division mailed the notice of deficiency to the plaintiffs' old Rose Street address. The Ninth Circuit has held that "a subsequently filed return with a new ad-

---

4. Jean Jaros's testimony was equivocal as to whether the $30,000.00 was a loan or equity investment. However, since she received no stock for the investment, it is probably more properly characterized as a loan.

5. All section references hereinafter are to title 26 of the United States Code.

dress does give the IRS notice" of the address change such that mailing the deficiency notice to the old address does not satisfy the IRS burden to provide notice. *King v. Commissioner of Internal Revenue*, 857 F.2d 676, 679 (9th Cir.1988); *Wallin v. Commissioner of Internal Revenue*, 744 F.2d 674, 676 (9th Cir.1984). Further, the Ninth Circuit has specifically held that the knowledge of the IRS Service Center should be imputed to the Audit Division for the purpose of determining the taxpayer's last known address. *King*, 857 F.2d at 680; *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312–13 (9th Cir.1982). Thus, in the present case, the IRS did not mail the notice of deficiency to the plaintiffs' last known address and cannot rely on the presumption created by section 6212.

The failure of the IRS to satisfy the statutory notice requirements is excused, however, if the taxpayer actually receives notice of the deficiency in sufficient time to petition the tax court for a redetermination of tax.[6] In the present case, it is undisputed that the plaintiffs did not receive the notice of deficiency since it was returned by the post office to the IRS unclaimed. However, the IRS argues that, since plaintiffs' mail was forwarded by the post office, mailing the deficiency notice to the plaintiffs' old address was tantamount to mailing it to the new address. Under section 6212, the IRS satisfies its obligation by sending the deficiency notice by certified mail to the last known address whether it is actually received or not. Since the postal forwarding process assured delivery to the plaintiffs' new address, the IRS contends that its mailing should be sufficient despite the fact that the notice was returned to the IRS. The IRS relies heavily on *Zikria v. Williams*, 535 F.Supp. 481 (W.D.Pa.1982), in which the court accepted the IRS argument presented here under very similar circumstances. The *Zikria* court emphasized that, since the notice was

returned to the IRS "unclaimed" rather than "undelivered," it could be presumed that a properly addressed notice would have met the same fate. *Id.* at 485. Thus, the court found that the "cause of the lack of actual notice was the plaintiffs' failure to claim the certified mail, not the incorrect address." *Id.*

This court does not find *Zikria* persuasive. As the Ninth Circuit has noted, section 6212 deals with instances in which actual notice is unlikely, *i.e.*, death or incapacity of the taxpayer, and, thus, allows the IRS to collect a deficiency without having to prove actual notice to the taxpayer. *Clodfelter v. Commissioner of Internal Revenue*, 527 F.2d 754, 756 (9th Cir.1975). Thus, section 6212 is essentially a legislative compromise that allows collection of a deficiency even in the absence of actual notice to the taxpayer, provided that the IRS sends the notice by certified mail to the taxpayer's last known address. Absent compliance with the statute, the IRS must prove actual notice. *Compare McKay v. Commissioner of Internal Revenue*, 886 F.2d 1237 (9th Cir.1989) (actual notice satisfied where taxpayer's attorney, who had been sent a copy by the IRS, sent photocopy of deficiency notice to taxpayer) *with Mulvania v. Commissioner of Internal Revenue*, 769 F.2d 1376 (9th Cir.1985) (no actual notice where the taxpayer's accountant, who had received a copy of the deficiency notice from the IRS, told the taxpayer of the deficiency notice over the telephone, but the taxpayer never saw the notice himself). In *McKay*, the Ninth Circuit emphasized that actual notice requires that it be "beyond contention that the taxpayer has received all of the information that would be furnished by receipt of the notice of deficiency itself." *McKay*, 886 F.2d at 1239. In the present case, the IRS did not mail the deficiency notice to the taxpayers' last known address and the taxpayers did not receive actual notice.[7]

---

**6.** Under 26 U.S.C. section 6213(a), a taxpayer may contest the deficiency notice by filing a petition in the Tax Court within 90 days of the notice. The taxpayer need not pay the tax before filing the petition and all collection efforts

by the IRS must cease pending the Tax Court's decision.

**7.** Absent direct evidence that the taxpayers willfully avoided the IRS notice, and no such evidence has been presented here, the court will

Thus, the court finds that the deficiency notice mailed by the IRS to the plaintiffs at their old Rose Street address was invalid.[8]

The IRS argues that, as a matter of policy, this court should find that its mailing of the deficiency notice to the plaintiffs' old address was tantamount to mailing to the plaintiffs' last known address since the deficiency notice was forwarded. However, the policy choice has already been made by Congress. By providing in section 6212 that certified mail to the last known address shall be sufficient, Congress has determined that the risk of undelivered or unclaimed mail depriving the taxpayer of actual notice is acceptable. Plaintiffs argue that the risk that certified mail will not be properly delivered is greater where that mail is subject to a forwarding process. The court agrees. Even if the risk of non-delivery is increased only slightly, Congress has specified what level of risk is acceptable.

The exception for forwarded mail urged by the IRS is qualitatively different than an "exception" for actual notice. Where the taxpayer receives actual notice of the contents of the deficiency notice, the purpose of the statute is satisfied. *See Clodfelter,* 527 F.2d at 755–56 (interpreting section 6213(a) as the notice requirement and section 6212 as a method of satisfaction of the notice requirement in the absence of actual notice). However, were the court to engraft a new exception onto section 6212 for forwarded mail, the court would be determining when actual notice of the contents of a deficiency notice is not to be required. Congress has already made this choice in legislating the last known address rule. 26 U.S.C. sec. 6212(b). This court will go no further in compromising the taxpayers' right to notice.

## II. Injunctive Relief.

■ While plaintiffs did not receive a timely notice of deficiency, they are not entitled to an injunction barring collection of the tax unless they can show irreparable injury and an inadequate remedy at law. *Jensen,* 835 F.2d at 198; *Cool Fuel,* 685 F.2d at 313–14. Ordinarily, a taxpayer has an adequate remedy at law; he or she can pay the tax and then sue for a refund. *See id.* In *Cool Fuel,* the affidavit of the president of the corporate taxpayer admitted the taxpayer's ability to pay the tax. 685 F.2d at 314. Thus, the Ninth Circuit was constrained to find that the taxpayer had an adequate remedy at law. *Id.* (citing *Bailey v. George,* 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816 (1922)). In *Jensen,* the Ninth Circuit found that plaintiff's allegations that the IRS levy on his wages would render him unable to provide the necessities of life for himself and his family sufficient to withstand a motion to dismiss for lack of irreparable injury. 835 F.2d at 198 (reversing the district court's dismissal based on lack of irreparable injury). The *Jensen* court distinguished between deprivations of necessities and monetary harm compensable at a later time. *Id.* (citing *Lopez v. Heckler,* 713 F.2d 1432, 1436–38 (9th Cir.), *rev'd in part on other grounds,* 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983)). The court continued:

> Moreover, the alleged failure by the IRS to give Jensen notice of the deficiency deprived him of the opportunity to challenge the claimed deficiency in the tax court without having to pay the tax. [citation.] This deprivation of the opportunity to litigate a tax liability before paying the tax can cause a substantial hardship to a taxpayer. [citation.] Such a deprivation is also "out of keeping with the thrust of the Code."

not presume that the lack of actual notice was caused by the plaintiffs. *Contra Zikria,* 535 F.Supp. at 485. Since section 6213 requires the IRS to provide the taxpayer with notice prior to attempting to collect a deficiency, the court concludes that it is the burden of the IRS to establish actual notice or willful avoidance where it cannot establish compliance with the method specified in section 6212. As noted above, the court finds that the IRS has not established that

plaintiffs willfully avoided the IRS notice. *See supra* text accompanying note 3.

8. While the court finds that the deficiency notice was invalid, the plaintiffs have presented no evidence of intentional or reckless disregard of the provisions of title 26 by any officer or agent of the IRS. Thus, plaintiffs claim for damages under section 7433 fails for a lack of proof.

*Id.* at 198–99 (quoting *Laing v. United States*, 423 U.S. 161, 176, 96 S.Ct. 473, 482, 46 L.Ed.2d 416 (1975)).

As noted above, the plaintiffs did not receive a timely notice of deficiency from the IRS and the notice of deficiency mailed to plaintiffs' Rose Street address was not sufficient under section 6212. Thus, plaintiffs were deprived of the opportunity to contest the deficiency notice prior to payment since they never received a timely notice. Further, while the plaintiffs in this case may be in better financial situation than the plaintiff in *Jensen,* they do not have sufficient liquid resources to pay the tax liability. *Cf. Cool Fuel,* 685 F.2d at 314 (taxpayer's admission of ability to pay tax fatal to claim for injunctive relief). Specifically, David Gibson has approximately $21,000.00 cash while his ex-wife plaintiff Jean Jaros has only *de minimis* savings. Since the plaintiffs' total liability to the government is now in excess of $100,000.00, they would need to raise approximately $80,000.00 in order to pay the tax. Further, David Gibson's net worth is estimated at approximately $88,000.00, a sum less than the deficiency claimed by the IRS.

However, plaintiff David Gibson has assets which he could liquidate or against which he could borrow. The equity in his current home, even with the improvements added by Gibson, is approximately the amount of his down payment of $28,000.00. David Gibson also testified that he could take an early distribution of up to one half of his and his current wife's retirement plans, totaling approximately $32,500.00. Presumably, Mr. Gibson could sell some of his and his wife's personal property valued at approximately $25,000.00. Thus, it appears that Mr. Gibson might be able raise sufficient funds to pay the deficiency.

As for plaintiff Jean Jaros, however, she and her husband do not appear to have any community property assets. Other than the speculative value of Mr. Jaros' services for the foundry, Mrs. Jaros only has her salary. Though her $55,000.00 annual salary is not insubstantial, it is immediately diminished by Mr. Jaros' $13,200.00 annual alimony obligation to his former wife. Further, since the foundry has no established line of credit and is barely breaking even, it does not seem likely that Jean Jaros could qualify for a substantial loan. Thus, given the Jaros' monthly expenses, it is unlikely that Jean Jaros could contribute substantially to the payment of the tax deficiency.

The IRS argues that David Gibson's self represented net worth of $88,000.00 is evidence in and of itself of his ability to pay the tax deficiency. However, in order for David Gibson to raise the funds necessary to pay the tax, he would be forced to incur substantial non-recoverable expenses in interest, taxes, and forfeitures. The early distribution of his retirement plan would subject him to a forfeiture penalty and substantial tax liability that had been previously deferred. A sale of his house to realize its equity would subject him to substantial tax on the gain realized.[9] Plaintiff Gibson's accountant estimated his tax liability from liquidation of assets to be approximately $33,000.00.[10] Additionally, Mr. Gibson would have to find and pay for alternative housing for him and his wife, thereby diminishing the funds realized on the sale of the house. As for borrowing the money to pay the tax, given the $100,000.00 tax deficiency hanging over Mr. Gibson's head and the likelihood that he would no longer have assets available to pledge as collateral, it is unlikely that Mr. Gibson would qualify for a substantial loan at this time notwithstanding the combined earn-

**9.** While a sale by Mr. Gibson of his house for the same price for which he purchased it would not lead to any gain, his basis in the current house is almost certainly below the purchase of the current home since he has owned a home since at least 1980 when he and Mrs. Jaros, then married, lived at the Rose Street address. *See* 26 U.S.C. sec. 1034 (providing for nonrecognition of gain on sale of principal residence when new home is purchased within two years of sale).

**10.** The court views the accountant's tax liability reserve as a very rough estimate of the amount of the potential liability. However, even if the amount is not certain, it is clear to the court that plaintiff would incur substantial tax liabilities from a forced liquidation.

ings of him and his current wife and his past credit worthiness. However, if able to do so and forced to borrow some or all of the funds to pay the deficiency, Mr. Gibson would incur substantial interest costs for the use of the money until he obtained the refund he would be entitled to pursuant to this court's holding regarding the lack of notice.[11]

In a refund suit by these plaintiffs, the IRS, having fully litigated in this action the issue of notice as to these plaintiffs and these tax years, would be collaterally estopped from arguing that it did give plaintiffs a proper notice of deficiency prior to the expiration of the statute of limitations. *See* Wright, Miller & Cooper, *Federal Practice and Procedure*, secs. 4416–4426 (1981 & Supp.1990).[12] As the government conceded, its failure to give the plaintiffs notice of the deficiency within the statute of limitations would render the assessment invalid and the plaintiffs would be entitled to a refund. *See* 26 U.S.C. sec. 6503(a).

However, if forced to bring a refund suit, plaintiffs would be unable to recover compensation for all of the costs they would incur. Specifically, the increased tax liabilities caused by liquidation of assets and any tax liabilities, forfeitures, or other penalties resulting from early distribution of the retirement plan would not be compensable in a refund suit by the plaintiff. Additionally, the plaintiffs would not be compensated for the sacrifices and hardships they would suffer if forced to sell their home and other belongings and go deep into debt to raise the funds needed to pay the deficiency. While plaintiffs may not be deprived of the necessities of life, the monetary harm they will suffer will not be compensable at a later time. *Cf. Jensen*, 835 F.2d at 198 (citing *Lopez v. Heckler*, 713 F.2d 1432, 1436–38 (9th Cir.), *rev'd in part on other grounds*, 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) as distinguishing deprivation of necessities from *monetary harm compensable at a later time*). Thus, the plaintiffs' injury is irreparable as their remedy at law, a refund suit, is not adequate because it will not fully compensate them for the harm caused by the untimely deficiency notice.

## CONCLUSION

Based on the foregoing, the court finds that the IRS failed to provide the plaintiffs with a timely notice of deficiency for the tax years 1980, 1981, and 1983 since the deficiency notice was not mailed to the plaintiffs' last known address and the plaintiffs did not receive actual notice of the contents of the deficiency notice prior

---

**11.** While the plaintiffs would be entitled to interest on any sums paid to and then refunded by the IRS, *see* section 6611, it is not clear whether the interest rate paid by the government would equal or exceed the rate at which plaintiffs could borrow. Thus, plaintiffs might have uncompensated interest costs.

**12.** A party is precluded from relitigating an issue previously resolved

> when the same "issue" is involved in both actions; the issue was actually litigated in the first action, after a full and fair opportunity for litigation; the issue was "actually decided" in the first action, by a disposition that is sufficiently "final," "on the merits," and "valid;" it was necessary to decide the issue in disposing of the first action, and—in some decisions—the issue occupied a high position in the logical hierarchy of abstract legal rules applied in the first action; the later litigation is between the same parties or involves nonparties that are subject to the binding effect or benefit of the first action; the role of the issue in the second action was foreseeable in the

first action, or it occupies a high position in the logical hierarchy of abstract legal rules applied in the second action; and there are no special considerations of fairness, relative judicial authority, changes of law, or the like, that warrant remission of the ordinary rules of preclusion. Once these requirements are met, issue preclusion is available not to defend against a demand for relief, but also as offensive support for a demand for relief.

Wright, Miller & Cooper, sec. 4416, at 137–38 (internal footnotes omitted). In the present case, all of the requirements of issue preclusion are satisfied; the issue of notice is the same issue that would be litigated in a refund suit, it was actually litigated in this action, it was actually and necessarily decided in this action, it was foreseeable that this issue would be central to a refund suit, the parties in a refund suit would be the same, and there is no special reason at this time that would merit relitigating the issue. Thus, it appears to the court that the government would almost certainly be precluded from rearguing the notice issue in a refund suit by these plaintiffs.

to the expiration of the statute of limitations. Further, given the facts that the failure of IRS to give the plaintiffs notice deprived them of the opportunity to make a pre-payment tax court petition, that the plaintiffs would be entitled to a refund if forced to sue for one, and that the non-recoverable costs to the plaintiffs are substantial, the court finds that the plaintiffs will suffer irreparable injury and that their remedy at law is inadequate. Therefore, the court hereby ENJOINS the IRS from assessing or collecting any tax deficiency and accrued interest and penalties from plaintiffs David Gibson and Jean Jaros arising from their joint tax returns for the years 1980, 1981, and 1983. Further, the court hereby ORDERS that all liens and or levies on plaintiffs' assets and or income be extinguished. Additionally, the court hereby ORDERS that any sums previously withheld by the government and applied to the tax deficiency at issue herein be refunded to the plaintiffs. Finally, the court finds that plaintiffs have failed to establish intentional or reckless disregard of the law by any officer or agent of the IRS. Thus, it is hereby ORDERED that plaintiffs take nothing on their claim for damages under section 7433. However, the court finds that plaintiffs are the prevailing parties in this action and are entitled to their costs of suit and reasonable attorneys' fees under section 7430 of title 26 of the United States Code. This Memorandum of Decision shall constitute the court's findings of fact and conclusions of law for purposes of Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.