George JARRO, Plaintiff,

v.

UNITED STATES of America and Anderson Meat Distributors Company.

No. 92–853–Civ.

United States District Court, S.D. Florida.

May 29, 1992.

Philip T. Weinstein, Miami, FL, for plaintiff.

Mark Steir, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendants.

### ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

MARCUS, District Judge.

THIS CAUSE comes before the Court upon Plaintiff George Jarro's motion for temporary restraining order. This is an action pursuant to 26 U.S.C. § 7426 against the United States for wrongful levy by the Internal Revenue Service ("IRS") on property which is not the taxpayer's. By the instant motion Plaintiff seeks to enjoin the IRS "from levying upon the sales commissions due the Plaintiff for the taxes of Coral Steak, Inc., a Florida Corporation." Motion for Immediate Hearing on Temporary Restraining Order and/or Preliminary Injunction at 1.

For the reasons detailed below, the Court concludes that it probably lacks jurisdiction to enter the injunctive relief requested and that even if we had the power to grant the relief sought, on this limited record, Plaintiff's showing of irreparable harm is insufficient for entry of this preliminary relief. Accordingly, Plaintiff's Motion for Temporary Restraining Order is DENIED.

Plaintiff was formerly the President and sole stockholder of Coral Steak, Inc., ("Coral Steak") a corporation, now defunct, which became indebted to the United States for delinquent payroll taxes. A portion of these taxes were "trust fund taxes" attributed personally to Plaintiff, see 26 U.S.C. § 6672. Plaintiff maintains, and the United States has not disputed, that Plaintiff paid the United States in full for the debt apportioned to him personally. The remainder of the taxes were owed by the corporation Coral Steak.

Subsequent to his employment with Coral Steak Plaintiff began to work for Defendant Anderson Meat Distributors ("Anderson"). Pursuant to a written contract with Anderson, Plaintiff's wages are in part a commission comprising a percentage of sales to customers brought to Anderson by Plaintiff. Plaintiff acknowledges that many of the customers he brought to Anderson were previously customers of Coral Steak. In March 1992 the IRS served a Notice of Levy on Anderson against "George Jarro as nominee of Coral Steak, Inc.," and began to seize a large percentage of Plaintiff's commissions. In essence, the Internal Revenue Service maintains that to the extent that customers of Coral Steak are now Plaintiff's customers at Anderson, commissions collected by Plaintiff are properly seized to satisfy Coral Steak's outstanding tax debt.

Plaintiff, however, maintains that he is not a nominee of Coral Steak, and that the commissions upon which the IRS has levied arise not from any proprietary right taken from Coral Steak, but wholly from his personal services rendered. Plaintiff argues that as a matter of state law, these commissions cannot be deemed Coral Steak's property. In sum, Plaintiff maintains that the IRS has wrongfully levied on his property in order to satisfy the obligations of Coral Steak, obligations for which he cannot properly be held accountable. On April 14, 1992 Plaintiff filed a complaint for injunctive relief and damages, entitled Complaint by a Person Other than the Taxpayer for Injunction and Other Relief Pursuant to 26 U.S.C. § 7426. After consulting with counsel for Plaintiff, this Court set the Cause down for a status conference on April 21, 1992, and at that status conference set an evidentiary hearing on Plaintiff's motion for temporary restraining order for April 22, 1992. At the April 22 hearing testimony was taken, various exhibits were offered and the Court heard argument as to the merits of Plaintiff's motion. In addition, the Court raised sua sponte the question of whether jurisdiction is vested in the Court to enter the requested injunctive relief.

At that time we expressed the concern that the Anti–Injunction Act, 26 U.S.C. 7421(a) may preclude the entry of an injunction—whether preliminary or permanent—in this instance. Then, as now, Plaintiff contended that the "wrongful levy exception" to the Anti–Injunction Act, 26 U.S.C. § 7426, a statutory exception to the Anti–Injunction Act, controls, and that by its terms the Court is empowered to grant injunctive relief. We expressed concern, however, that under the express language of section 7426 and under the authority of Ketcham v. United States, 783 F.Supp. 511 (D.Nev.1991), the wrongful levy exception was inapplicable. Accordingly, the Court directed further briefing as to jurisdiction as well as to other aspects of Plaintiff's claims. In addition, after hearing from the parties the Court established an expedited briefing and discovery schedule so that Plaintiff's claims on the merits could be tried as soon as reasonably possible.

## I. Jurisdictional Analysis

The Eleventh Circuit has recently addressed the power of the federal courts to enjoin the collection of taxes. In Mathes v. United States the Court wrote as follows:

The question of jurisdiction to enjoin tax assessments and collections is expressly covered by 26 U.S.C. § 7421(a), the Anti–Injunction Act, which provides that "no suit for the purpose of restraining the as-

sessment or collection of any tax shall be maintained in any court by any person ..." Section 7421(a) expressly allows the following exceptions: petitions to the Tax Court for a redetermination of a deficiency pursuant to 26 U.S.C. §§ 6212(a) and (c), 6213(a) and civil actions in the district court pursuant to 26 U.S.C. § 7426(a) and (b)(1).

Courts have recognized that, aside from the express statutory exceptions of this statute, federal courts may enjoin the collection of taxes if it can be shown that (1) under no circumstances could the government ultimately prevail on its tax claim and (2) equity jurisdiction otherwise exists; either ground being conclusive. *Enochs v. Williams Packing [ & Nav.] Company,* 370 U.S. 1, 6–7, 82 S.Ct. 1125, 1128–1129, 8 L.Ed.2d 292 (1962); *Bowen v. United States,* 331 F.2d 149, 150 (5th Cir.1964) (per curiam); *see also Intercontinental Jet, Inc. and Jerry Lee Harvey v. United States of America,* 690 F.Supp. 1012 (S.D.Fla.1988). Therefore, the general rule is that, except in very rare and compelling circumstances, federal courts will not entertain actions to enjoin the collection of taxes.

901 F.2d 1031, 1033 (11th Cir.1990) (footnote omitted) (ellipses in original). *See United States v. Doyal,* 462 F.2d 1357, 1358 (5th Cir.1972); *Elias v. Connett,* 908 F.2d 521, 523 (9th Cir.1990) ("Actions to enjoin the assessment and collection of taxes by the IRS are narrowly limited by the Anti–Injunction Act, 26 U.S.C. 7421."); *Zernial v. United States,* 714 F.2d 431, 434 (5th Cir.1983).

Plaintiff grounds his claim for injunctive relief on one of the statutory exceptions to the Anti–Injunction Act, the wrongful levy exception located in section 7426.[1] As summarized by the Ninth Circuit:

> Section 7426 was added to the Internal Revenue Code of 1954 by the Federal Tax Lien Act of 1966, P.L. 89–719, 80 Stat.

1142 Sec. 110(a). Prior to that, the United States could not be sued by third persons where its collection activities interfered with third party property rights. This included a situation where the government wrongfully levied upon the property of a third person in an attempt to collect from a taxpayer.

*Shannon v. United States,* 521 F.2d 56, 60 n. 10 (9th Cir.1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976); *see* S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3722, 3751 [hereinafter "Senate Report"] Section 7426(a)(1) provides for a limited waiver of the United States' sovereign immunity under certain circumstances:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1). As discussed above, Plaintiff in the instant action maintains that he is not the person against whom the assessment exists.

The federal courts' jurisdiction to grant injunctive relief is specifically addressed in section 7426(b)(1). The critical language, emphasized below, suggests that in order for injunction jurisdiction to vest, a third party's rights in the property levied upon must be threatened with irreparable harm. The statute provides as follows:

> (b) Adjudication. *The district court shall have jurisdiction to grant only* such of the following forms of relief as may be appropriate in the circumstances:
>
> (1) Injunction.—*If a levy or sale would irreparably injure rights in property* which the court determines to be superi-

---

1. The Anti–Injunction Act provides:
   Except as provided in section[ ] ... 7426(a) ... no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a).
   We observe that the only basis for this Court's power to enter the requested injunction is section 7426, and we find that none of the other exceptions to the Anti–Injunction Act apply.

or to the rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale. . . . .

26 U.S.C. § 7426(b)(1) (emphasis added). The statute thus makes clear that a district court has jurisdiction to issue an injunction only "if a levy or sale would irreparably injure rights in property. . . ."

In *Ketcham v. United States* the District Court of Nevada recently explicated the meaning of "irreparably injure rights in property" in section 7426. 783 F.Supp. 511 (D.Nev.1991). In that case, Plaintiff Evelyn Ketcham moved for a preliminary injunction to prohibit the IRS from levying upon her interest in a partnership. *Id.* at 512. The levy was issued based upon a notice of federal tax lien for taxes owned by Ms. Ketcham's former husband. The Court stated the issue before it as "whether the assets sought to be levied upon belonged to plaintiff prior to recordation of the notice of the lien. This issue in turn depends directly on whether a legally effective assignment of this property from Mr. Ketcham to plaintiff was perfected" before the notice of lien was recorded. *Id.* The Court concluded, on the limited record before it, that the evidence established that the assignment did in fact occur prior to the recordation of the lien, and that Ms. Ketcham's interest in the property was superior to that of the government.

Despite finding that the IRS had levied upon the property of one who had a superior interest and observing a "strong likelihood of success on the merits," *Id.* at 519, the Court found that an injunction could not issue because Plaintiff had not demonstrated irreparable injury to "rights in property." Because *Ketcham* is the only case this Court has found, or that has been cited to us, that is directly on point, we quote that opinion at some length:

> The Government contends that even if the 1978 assignment is valid, this court does not have authority to grant an injunction because the provisions of 26 U.S.C. § 7426(b)(1) permit an injunction to be issued only if a levy would "irreparably injure rights in property which the court determines to be superior to the rights of

the United States in such property . . ." The Government argues that injury to "rights in property," as used in the statute, refers to the property levied upon. The government contends that the levy will not result in any irreparable injury to the rights of the plaintiff in the levied property.

> On the other hand, plaintiff argues that "rights in property" as used in the statute must be read more broadly to include loss of rights in *other* property owned by a person in the situation of plaintiff, such as her interest in one of the Hawaiian condominiums she owns. Plaintiff claims she will be forced to sell her other property to subsist unless the levy is lifted, because she has no other income, means, or ability to meet the necessities of life. Testimony of plaintiff's daughters and son at the hearing supports this contention.

*Id.* at 517. We observe that the argument made by the plaintiff in *Ketcham* is substantially similar to that offered by the Plaintiff at the bar at oral argument, namely, that by virtue of the deprivation of his wages, Jarro would be unable to meet certain necessities of life.

The district court in *Ketcham* found as follows:

> Plaintiff's reading of the statute, though ingenious, is strained. The protection in the injunction provision of the statute for the rights of a third person in property appears to relate to rights in the property levied upon, rather than other property owned by a claimant such as plaintiff. According to the statute, the required irreparable injury must be to a claimant's rights in property which the court determines to be superior to "the rights of the United States in *such* property" (emphasis supplied). The statute speaks in terms of a "levy" which must be taken to refer to a levy on the property in which the United States claims an interest. The rights of a claimant which may be lost through the levy must be in property in which the United States has claimed rights, thus the property levied upon.

> The legislative history of section 7426 supports this reading of the statute. The

senate report makes clear that the irreparable injury must be to the rights in the property levied upon. The report provides, "Injunctive relief is limited to cases where the court determines the Government's action is wrongful and, if completed, would irreparably injure the rights of another in *the* property...." S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3722, 3751 (emphasis added).

*Id.* at 517–18. *See Sodorff v. United States,* 614 F.Supp. 74, 76 (E.D.Wash.1985) ("The only logical interpretation of the quoted section is that if the court determines that the rights in property of one other than the taxpayer are superior to the United States and a sale would irreparably injure that persons right, the court may enjoin the sale.")

Plaintiff argues that the *Ketcham* court erred in several ways. First, Plaintiff suggests that the district court misread the legislative history. *See* Plaintiff's Memorandum in Further Support of Motion for Temporary Restraining Order [hereinafter "Plaintiff's Supplemental Memorandum"] at 6; Senate Report, 1966 U.S.Code Cong. & Admin.News at 3751. We are not persuaded by Plaintiff's argument. Despite Plaintiff's suggestion that Congress' primary reason for enacting the wrongful levy exception was to allow wage earners to obtain injunctions against wrongful levy, the Senate Report is silent as to wage-earners, and Plaintiff has cited no other source of legislative history. Moreover, Plaintiff in his Supplemental Memorandum emphasizes a phrase of the Senate Report. *See* Plaintiff's Supplemental Memorandum at 4. But the paragraph to which Plaintiff alludes also says that "[i]njunctive relief is *limited* to cases where the court determines the Government's action is wrongful and, if completed, would *irreparably injure the rights of another in the property* which are prior to the rights of the Government...." Senate Report, 1966 U.S.Code Cong. & Admin.News at 3751 (emphasis added).

Plaintiff also suggests that the *Ketcham* court misapplied binding Ninth Circuit precedent. Citing *Jensen v. Internal Revenue Service,* 835 F.2d 196 (9th Cir.1987) and *Gib-* *son v. United States,* 761 F.Supp. 685 (C.D.Cal.1991), Plaintiff argues that deprivation of the necessities of life can constitute irreparable harm sufficient to confer jurisdiction under section 7426. *Jensen* and *Gibson,* however, are cases in which jurisdiction to grant an injunction was grounded in section 6213(a), a different statutory exception to the Anti–Injunction Act, and one that is inapplicable in *Ketcham* and the case *sub judice.* *See Jensen,* 835 F.2d at 198 ("Section 6213(a) expressly provides that a levy may be enjoined 'notwithstanding the provisions of section 7421(a).' The district court had jurisdiction to hear Jensen's suit."); *Gibson,* 761 F.Supp. at 688 ("One of the exceptions to the Anti–Injunction Act provides that the court may enjoin the collection or assessment of tax where the IRS has not satisfied its obligation to give the taxpayer a timely notice of deficiency." (citing *Jensen,* 835 F.2d at 198; 26 U.S.C. §§ 6212, 6213(a), 7421)). The *Jensen* and *Gibson* courts found that deprivation of the necessities of life could constitute "irreparable harm" in the traditional sense of the "equitable grounds for injunctive relief," *see Jensen,* 835 F.2d at 198; neither court considered whether such deprivation would constitute "irreparabl[e] injury to rights in property" sufficient to confer injunction jurisdiction under 7426(b).

■ If anything, Plaintiff's citation to section 6213(a) would appear to militate against his position. Generally, this section prohibits assessment of taxes for periods following the mailing of a notice of a deficiency and explicitly provides an exception to the Anti–Injunction Act, 26 U.S.C. § 7421(a), when the government violates this prohibition:

**Time for filing petition and restriction on assessment**—Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed ... the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided ... no levy or proceeding in court for its collection shall be made, begun or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90–day or 150–day peri-

od, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. *Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court,* including the tax court. 26 U.S.C. § 6213(a) (emphasis added). The contrast between this exception to the Anti–Injunction Act and the exception contained in section 7426(b) makes clear that 7426(b)(1) is indeed a narrowly drawn exception. *Compare* 26 U.S.C. § 7426(b)(1) *with* 26 U.S.C. § 6213(a). As the *Ketcham* court acknowledged:

> Like section 7426, sections 6212(a) and 6213(a) are specifically excepted from the anti-injunction statute. However, these sections, unlike section 7426, do not attempt to limit the types of irreparable harm for which injunctions can be issued to prevent. Thus the Government contends that deprivation of the necessities of life does not constitute irreparable harm for purposes of section 7426.
>
> We agree. We cannot regard the requirement in section 7426 of irreparable injury "to rights in property" as accidental. Whatever the requirements for injunctions in the other explicit exceptions to the anti-injunction statute, section 7426 clearly requires irreparable injury to rights in the property.

*Ketcham,* 783 F.Supp. at 519.

■ Finally, Plaintiff also argues that by virtue of his loss of access to the commissions levied upon, he suffers irreparable injury "to rights in property" sufficient to satisfy section 7426(b)(1). Plaintiff argues that money's principal feature is its ability to be spent immediately, and that by depriving Plaintiff of his wages, the levy deprives Plaintiff of his right to immediate possession. Plaintiff's argument is unpersuasive. Temporary deprivation of money, in and of itself, cannot constitute irreparable harm, and certainly cannot satisfy the narrower term, "irreparable injury in property". "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Northeastern Florida*

*Chapter v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990). As Plaintiff can recover the money levied upon if he ultimately prevails, *see* 26 U.S.C. § 7426(b)(2)(B) ("If the Court determines that such property has been wrongfully levied upon, the court may ... grant a judgment for the amount of money levied upon."), no irreparable harm, as a matter of law, may result by virtue of the temporary deprivation of money alone. If a temporary deprivation of money, in and of itself, could constitute irreparable harm, every claim for compensatory damages could establish irreparable harm.

We observe that the *Ketcham* court similarly rejected the claim that temporary deprivation of the notes at issue there, or even their sale, would constitute irreparable harm to rights in property under section 7426(b)(1):

> [Ms. Ketcham] cannot claim that the levy will irreparably injure her rights in the property levied upon, because her interest in the property will not be irreparably lost.
>
> If entitled, she can eventually obtain the return of the property under section 7426(b)(2)(A). She can also recover any money the Government has received from payments on the notes under section 7426(b)(2)(B). If the Government sells the notes, she can recover their value under section 7426(b)(2)(C).

*Ketcham,* 783 F.Supp. at 518. *Cf. Sodorff,* 614 F.Supp. at 76–77 (enjoining under 7426(b) tax sale of real property).

We conclude on this preliminary record that the Court appears to be without jurisdiction to enter the desired relief. The plain language of the statute, its legislative history, and the analysis presented in *Ketcham* suggest that for jurisdiction to be reposed in the court under 7426(b)(1) to enter an injunction against a levy, irreparable injury to rights in the property levied upon must be threatened. The Plaintiff's only claimed injury to his "right in property" is the temporary loss of access to the monies levied upon. Such harm, though undoubtedly real, appears nonetheless to be insufficient to satisfy the statute.

## II. Plaintiff's Entitlement to Equitable Relief

Even, however, if we were to find that jurisdiction exists to enter the injunctive relief sought, we would nonetheless deny Plaintiff's application for temporary injunction on this record. The standard for granting injunctive relief is familiar and well settled. The Court of Appeals for the Eleventh Circuit has written:

> In order to grant a preliminary injunction, a district court must find the following: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Guaranty Financial Services, Inc. v. Ryan,* 928 F.2d 994, 997–98 (11th Cir.1991) (citing *United States v. Lambert,* 695 F.2d 536, 539) (11th Cir.1983) (quoting *Canal Auth. v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974)).

The Eleventh Circuit has stressed that the threat of irreparable harm is an absolute prerequisite to the issuance of a injunctive relief. The Court has written:

> "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974). A showing of irreparable harm is "the *sine qua non* of injunctive relief." *Frejlach v. Butler,* 573 F.2d 1026, 1027 (8th Cir.1978). The injury must be "neither remote nor speculative, but actual and imminent". *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 973 (2d Cir.1989). An injury is "irreparable" only if it cannot be undone through monetary remedies. "The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate

compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson,* 415 U.S. at 90, 94 S.Ct. at 953; . . . .

*Northeastern Florida Chapter v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990). *See Ferrero v. Associated Materials, Inc.,* 923 F.2d 1441, 1449 (11th Cir.1991); *Spiegel v. City of Houston,* 636 F.2d 997, 1001 (5th Cir.1981); *cf. Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) ("[T]the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.").

As discussed above, temporary deprivation of money, alone, generally cannot constitute irreparable harm. *See id.* Of course, this does not necessarily determine that if a plaintiff is deprived of income such that he cannot meet basic needs, the seizure cannot constitute irreparable harm. The Ninth Circuit's opinion in *Jensen,* relied upon by Plaintiff, held that if a levy "deprived Jensen of the ability to provide necessities of life for himself and his family," then the levy "caused more than monetary harm." *Jensen,* 835 F.2d at 198.[2]

In the instant case, Plaintiff has failed to show that the levy deprives him or his family of the necessities of life. Notably, the record is devoid of evidence of Plaintiff's expenses and obligations. George Jarro's affidavit, attached to the motion for injunctive relief, says nothing specific about any harm suffered. *See* Motion for Immediate Hearing on Temporary Restraining Order and/or Preliminary Injunction, Exhibit A. At the initial status conference of this Cause, counsel for Plaintiff maintained that Plaintiff may be unable to put food on the table because of the levy. No evidence offered tends to establish a deprivation so serious, however. Likewise, in Plaintiff's post-hearing brief, Plaintiff states the following:

> Jarro will suffer irreparable injury if relief is not granted. We do not think this point requires elaborate argument. Jarro is a

---

**2.** We observe that Plaintiff has cited no Eleventh Circuit precedent for this proposition, and that

*Jensen* has been criticized. *See Petrie v. Commissioner,* 686 F.Supp. 1407, 1416–17 (D.Nev.1988).

wage (commission) earner with a wife and two children to support. The evidence shows that at least 70% of his weekly remuneration is being seized. Even if he ultimately prevails, his credit is likely to be ruined, his mortgage may be foreclosed; and his college student daughter may have to drop out to wait until final hearing.

Plaintiff's Supplemental Memorandum at 14. But no documentary or testimonial evidence elicited supports Plaintiff's contention that "his credit is likely to be ruined; his mortgage may be foreclosed; and his college student daughter may have to drop out...."

If anything, the evidence suggests that Jarro has substantial assets upon which he may draw until this case is finally decided. The evidence adduced at the hearing showed that the IRS is taking about 70% of Plaintiff's commissions, leaving Plaintiff with about $400.00 per week. Furthermore, on cross-examination the Plaintiff Jarro testified that he has about $40,000.00 in the bank, and that he recently sold his house for about $775,000.00. Without some evidence showing Jarro's expenses, we are unable to see how the ready availability of $40,000.00 along with the proceeds of the sale of his home is compatible with a claim of a fundamental inability to meet life's necessities. On this limited record, among other things devoid of evidence of Plaintiff's expenses and obligations, Plaintiff has failed to establish any actual, imminent harm he will suffer if the injunction is not entered. Based on the evidence presented to date the harm suffered by Plaintiff may be altogether temporary in nature, and should he prevail, he may be adequately recompensed with monetary damages.

Accordingly, for the reasons detailed above, Plaintiff's motion for temporary restraining order must be and is DENIED. Because of Plaintiff's interest in a prompt resolution of his claim, the Court has established an expedited briefing schedule which provides that all discovery must be completed on or before July 17, 1992, a joint pre-trial stipulation and any pre-trial motions must be filed on or before July 31, 1992, and a final pre-trial conference will be conducted before

the undersigned on August 20, 1992 at 9:00 a.m.

DONE AND ORDERED.