Dolores JOHNSON, Plaintiff,

v.

INTERNAL REVENUE SERVICE; Richard Rorosco, District Director;  Jim Hughes, Revenue Officer;  and United States of America, Defendants.

Bankruptcy No. CV 94–5325–SVW(Ex).

United States District Court,
C.D. California.

Dec. 21, 1994.

Dolores Johnson, Long Beach, CA, pro se.

Nora M. Manella, U.S. Atty., Edward M. Robbins, Jr., Asst. U.S. Atty., Chief, Tax Div., Richard G. Stack, Asst. U.S. Atty., Los Angeles, CA, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WILSON, District Judge.

This matter came on for trial before this Court on October 25, 1994, the Honorable Stephen V. Wilson, United States District Judge, presiding. Further proceedings were held on November 28, 1994 on the issue of whether the Internal Revenue Service sent a statutory notice of deficiency to plaintiff prior to the assessment of the 1987 income tax deficiency against her. Based upon the evidence adduced at trial and at the November 28, 1994 post-trial hearing, and all matters that are properly part of the record, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On August 4, 1994, plaintiff Delores Johnson instituted this action by filing a pleading entitled "COMPLAINT TO QUITE [sic] TITLE UNDER TITLE 28 U.S.C. § 2410(A) AND FOR EQUITABLE RELIEF UNDER THE JUDICIAL DOCTRINE OF ECONOMICAL HARDSHIP; DAMAGES; ACTUAL AND PUNITIVE; FOR BAD FAITH AND OPPRESSION" (hereafter "Complaint"). On August 10, 1994, the Court, the Honorable A. Wallace Tashima presiding, entered an Order denying plaintiff's ex parte motion for a temporary restraining order (hereafter "Ex Parte Motion"). Subsequently, in an Order entered on October 5, 1994, the Court denied plaintiff's motion for a preliminary injunction (hereafter "Motion").

2. In her Complaint, plaintiff seeks to enjoin tax collection action undertaken by the Internal Revenue Service (hereafter "IRS" or "Service") with respect to her 1987, 1992 and 1993 income tax liabilities (hereafter collectively referred to as "subject liabilities").

3. On or about July 27, 1994, the IRS served a Notice of Levy on Wages, Salary, and Other Income (Form 668–W) upon plaintiff's employer, International Transportation Service, with respect to the salary payable to plaintiff. (Complaint, ¶ 14). The Notice of Levy dated July 27, 1994 erroneously stated that plaintiff was not entitled to any exemptions from levy under Section 6334(a)(9) of the Internal Revenue Code. For that reason, on August 9, 1994, Revenue Officer Jim Hughes sent plaintiff's employer an amended

levy allowing plaintiff one exemption from levy for herself, as a married person filing a separate return, and such additional exemptions from levy to which plaintiff established entitlement by submitting to the IRS a "written and properly verified statement." *See* 26 U.S.C. § 6334(d)(2); Treas.Reg. § 301.6334–5(b), 26 C.F.R. On or about August 9, 1994, plaintiff's employer completed an acknowledgement form accompanying the amended levy and tendered a check in the amount of $2,067.08 to the IRS. The amount tendered represented the entire amount of plaintiff's take home salary for the pay period ending August 4, 1994, *only because plaintiff refused to accept a check for $240.38* (i.e., the amount exempt from levy based on one exemption from levy). The "Remarks" section of the levy acknowledgement form states: "Delores refused to accept check for $240.38. IRS check includes this amount."

4. Plaintiff complains of other tax collection activity in her Complaint. For example, on May 11, 1994 and June 13, 1994, respectively, the IRS filed Notices of Federal Tax Lien in Los Angeles County regarding the subject liabilities. (Complaint, ¶¶ 12–13).

5. Plaintiff contends that she meets the statutory and judicial exceptions to the Anti–Injunction Act, 26 U.S.C. § 7421(a) for two reasons. First, the IRS allegedly assessed and collected the subject liabilities without first mailing statutory notices of deficiency to plaintiff at her last known address, as required by 26 U.S.C. §§ 6212 and 6213(a). Thus, plaintiff claims that she falls within the exception to the Anti–Injunction Act prescribed by 26 U.S.C. § 6213(a). (Complaint, ¶¶ 2–3). Second, the IRS allegedly assessed and collected plaintiff's 1987 income tax liability beyond the three-year statute of limitations for assessment prescribed by 26 U.S.C. § 6501(a). (Complaint, ¶ 4). In her complaint, plaintiff asserts that she filed a 1987 return with the IRS in September of 1989, and that the IRS did not make an assessment with respect to that period until April 26, 1993, after the expiration of the applicable statute of limitations. (Complaint, ¶ 15).

6. Plaintiff contends that she does not have an adequate legal remedy because the IRS allegedly deprived her of an opportunity to challenge the claimed deficiencies in the United States Tax Court by failing to send her notices of deficiency and failing to timely demand payment pursuant to 26 U.S.C. § 6303(a). Thus, plaintiff asserts that the deprivation of a pre-payment forum in which to litigate her tax liabilities has caused her "substantial hardship," since she will now be required to pay the taxes before seeking refund. (Complaint, ¶¶ 5–6). Plaintiff further alleges that the levy on her wages has caused "more than monetary harm," since it allegedly has deprived her of the necessities of life, and she allegedly "has no other source of income." *See* Complaint, ¶¶ 14 and 22–23.

7. In her Complaint, plaintiff prays for a temporary restraining order and/or a preliminary or permanent injunction prohibiting the defendants from garnishing plaintiff's wages and bank accounts, for actual damages against each defendant in the amount of $5,000.00, for "compensatory damages" against each defendant in the amount of $3,000.00 for allegedly depriving plaintiff of her "procedural due process" rights to petition the Tax Court for a redetermination of her liabilities without first having to pay the subject liabilities, for punitive damages against each defendant in the amount of $3,000.00, for "breach of fiduciary relationship and duties; and for bad faith and oppression," and for costs and paralegal fees incurred.

8. On October 4, 1994, defendants filed an answer to plaintiff's complaint. In their answer, defendants averred that plaintiff was not entitled to any of the relief requested.

9. In her Memorandum of Contentions of Fact and Law filed on October 18, 1994 and at trial, plaintiff abandoned her causes of action pertaining to the tax years 1992 and 1993. Thus, plaintiff agreed that she is liable for the 1992 and 1993 Federal income tax liabilities assessed and collected from her.

10. Therefore, the only issues raised in this case are whether the IRS assessed plaintiff's 1987 income tax liability outside of the three-year statute of limitations for assessment prescribed by 26 U.S.C. § 6501(a); whether the IRS sent a statutory notice of deficiency to plaintiff at her last known ad-

dress prior to the assessment of the 1987 income tax deficiency; and, if not, whether the IRS nevertheless was authorized to make the 1987 tax assessment against plaintiff. Plaintiff's ability to obtain relief in this action depends upon the date that she filed her 1987 return with the IRS and whether the IRS sent her a notice of deficiency for that year. Plaintiff also would be required to establish irreparable injury and an inadequate legal remedy in order to obtain injunctive relief.

11. On October 20, 1994, the parties lodged a Stipulation to Continue the trial on the grounds that this case had been pending for only two and one-half months and that the parties had not had an opportunity to conduct discovery. The parties and the Court discussed that proposed Stipulation prior to the start of trial on October 25, 1994. The Court explained that either party had the right to a continuance of the trial, if it so desired. Plaintiff and defendants' counsel each stated that they wished to proceed with the scheduled trial.

12. The IRS has made the following assessments and abatements of income taxes, penalties and interest against plaintiff for the 1987 tax year:

| Tax Year | Assessment/ Abatement Date | Amount Assessed/Abated[1] |
|---|---|---|
| 1987 | 04/26/93 | $91,471.41 (T)[2] |
|  |  | 1,669.00 (P1) |
|  |  | 20,965.85 (P1) |
|  |  | 360.57 (P3) |
|  |  | 4,516.79 (P3) |
|  |  | 72,785.35 (I) |
|  | 01/10/94 | 10.00 (F) |
|  | 02/28/94 | 1,669.00 (P2) |
|  | 03/28/94 | (83,863.41 )(T) |
|  |  | (20,965.85 )(P1) |
|  |  | (4,516.79 )(P3) |
|  |  | (66,700.18 )(I) |

(Exhibit No. 100, Certificate of Assessments and Payments).

13. As of August 5, 1994, the unpaid balance of the tax liability assessed against plaintiff for the year 1987 was $12,887.34, excluding statutory additions and accruals.

1. Amounts abated appear in brackets.

2. T = Assessed Tax.
P1 = Late filing penalty (26 U.S.C. § 6651(a)(1)).
P2 = Failure to pay penalty (26 U.S.C. § 6651(a)(2)).

14. Prior to trial, plaintiff submitted the declarations of Delores Johnson and Ted Freedman, pursuant to the Court's "Order Re: Civil Trial Preparation" dated September 26, 1994. The Court admitted those declarations at trial as Exhibit Nos. 15 and 16. Prior to trial, defendants submitted the declaration of Spencer Kell pursuant to the Court's Order dated September 26, 1994. At the close of trial, the Court admitted the Kell Declaration in its entirety as Exhibit No. 112.

15. The Johnson and Freedman declarations address only the question of when plaintiff mailed her 1987 return to the IRS. Plaintiff made no showing in either her declaration or trial testimony that she has an inadequate remedy at law and/or that she would sustain irreparable injury if permanent injunctive relief is not granted.

16. In her declaration, plaintiff stated that on September 11, 1989, she received her 1987 tax return (Form 1040) from her tax preparer, Ted Freedman, who instructed her to date, sign and mail the return to the Internal Revenue Service Center in Fresno, California. Plaintiff further stated that she then signed and dated her 1987 return and went to the LAX Terminal Annex Post Office and deposited the return in the United States mail, postage paid and addressed to:

Internal Revenue Service Center

5045 E. Butler Avenue

Fresno, CA 93888

17. Plaintiff's testimony at trial was consistent with the statements that she made in her declaration, as set forth above. At trial, plaintiff admitted that the only evidence she had to support her contention that she filed her 1987 return with the IRS in September of 1989 is a copy of the return she allegedly filed (Exhibit No. 6) and her testimony to that effect. Plaintiff testified that no one was with her when she mailed her 1987

P3 = Failure to pay estimated tax penalty (26 U.S.C. § 6654).
I = Assessed interest.
F = Assessed fees and collection costs.

return to the IRS at the LAX Terminal Annex. Moreover, plaintiff failed to produce any documentary evidence, such as a certified mail receipt or a cover letter, that she mailed her 1987 return to the Internal Revenue Service in September of 1989.

18. Plaintiff testified that she was not sure whether she had mailed her 1987 State income tax return at the same time she allegedly mailed her 1987 return to the IRS. Plaintiff, however, stated that she normally would have mailed her Federal and State income tax returns at the same time. Neither plaintiff nor the defendants introduced any documentary evidence as to whether or when plaintiff filed her 1987 State income tax return.

19. Plaintiff also testified that did not file her 1987 Federal income tax return on time because she was attempting to save the money necessary to pay the tax shown as due and owing on her return (i.e., $7,608.00). Plaintiff, however, testified that when she finally filed her 1987 return, she did not tender any remittance with the return. *See also* Exhibit Nos. 100 and 102 (the IRS's records also indicate that plaintiff did not tender any payment with her 1987 return).

20. Plaintiff testified that she did not receive a statutory notice of deficiency from the IRS for the tax year 1987. Plaintiff, however, testified that her residence address in 1993 was 5758 Chestnut Avenue, Long Beach, California 90805. That is the same address as that appearing on the 1987 notice of deficiency (Exhibit No. 103, p. 1) and on the IRS examination report dated December 18, 1992, that plaintiff admittedly received (Exhibit No. 104, p. 2).

21. Plaintiff further testified that she was aware of the requirement that a taxpayer must have income taxes withheld from her wages and salary each time she gets paid. Plaintiff added that she did not have any income taxes withheld from her wages and salary during the tax year 1992, but believed that taxes had been withheld from her wages during the tax year 1993. However, when defendants' counsel showed plaintiff a copy of her 1993 return, plaintiff acknowledged that no income tax was withheld from her wages and salary during 1993. (Exhibit No. 108).

Plaintiff could not explain why she had not had income taxes withheld from her wages and salary in 1992 and 1993.

22. Plaintiff is a tax protestor. The IRS's collection file pertaining to plaintiff contains a three-page document entitled "Affidavit of Delores Johnson" (hereafter "Affidavit"). (Exhibit No. 109). Plaintiff drafted the Affidavit in response to the Notice of Federal Tax Lien dated December 14, 1993, which the IRS recorded on May 11, 1994. (Exhibit No. 1 attached to Complaint). In the Affidavit, plaintiff claims that the Notice of Federal Tax Lien is in violation of 15 U.S.C. § 1692 (the Fair Debt Collection Practices Act) and 18 U.S.C. § 1341 (mail fraud) because "no human being verified under penalty of perjury that the alleged amount you claim is true and correct." (Exhibit No. 109, p. 1, fourth unnumbered paragraph). Plaintiff makes other outlandish claims in her Affidavit, to the effect that she is not liable for income taxes and that her city of residence (i.e., Long Beach, California) is outside the geographical scope of the "Buck Act," the alleged "liability statute for Title 26, Income Tax laws." (Exhibit No. 9, pp. 1–3, ¶¶ 1–4, 14–15 and 16–17).

23. Plaintiff testified that she executed the Affidavit under penalty of perjury in August of 1994, about the time that she filed her Complaint in this action. Plaintiff claimed that she drafted the Affidavit without anyone else's assistance out of "frustration" with her tax problems. Plaintiff, however, testified that she did not know what the "Buck Act" was, even though her Affidavit repeatedly refers to that Act. Plaintiff further testified that, even though she stated in the Affidavit that she is not liable for income taxes and that the Notice of Federal Tax Lien filed on May 11, 1994 is illegal, she does not really believe in the truth of those statements. Plaintiff could point to no specific facts that had caused her to change her beliefs regarding the Federal income tax system in the short interval between the execution of her Affidavit and the filing of her Complaint.

24. In his declaration, Ted Freedman stated that he is tax preparer, duly licensed

to prepare income tax returns for taxpayers. Mr. Freedman testified at trial that he has been a certified public accountant and licensed by the State of California for twenty (20) to thirty (30) years. In his declaration, Mr. Freedman stated that he prepared a 1987 tax return for plaintiff in September of 1989. Mr. Freedman further stated that, on September 11, 1989, he gave plaintiff the 1987 return that he had prepared on her behalf, and instructed plaintiff to mail the return to the Internal Revenue Service Center in Fresno, California.

25. Mr. Freedman's testimony at trial was consistent with the statements that he made in his declaration, as set forth above. Mr. Freedman testified that after he has prepared a taxpayer's return, it is his standard practice to sign the return as tax preparer, but that it is *not* his standard practice to place a date beside his signature. Mr. Freedman verified his signature on both the copy of the 1987 return that plaintiff claims she mailed to the IRS in September of 1989 (Exhibit No. 6) and the copy of the 1987 return the IRS claims it first received from plaintiff on August 12, 1993 (Exhibit No. 106). Defendants' counsel then pointed out to Mr. Freedman that neither copy of plaintiff's 1987 return had a date beside the preparer's signature. Mr. Freedman was unable to explain how he could have known the date on which he had given the 1987 return to plaintiff, since he did not date the return.

26. Spencer Kell is employed by the Internal Revenue Service as a Revenue Officer, with assignment to the Special Procedures staff, Los Angeles District, as a Suit Advisor. In both his declaration and at trial, Mr. Kell stated that he is familiar with the manner in which taxes, interest and penalties are assessed by the IRS Service Center in Fresno, California. Mr. Kell also is familiar with entries in the Service's computer records concerning the receipt of tax returns, attempts to obtain tax returns from a non-filing taxpayer, the assessment of taxes, and the giving of notices and demands for payment after an assessment has been made. In both

his declaration and at trial, Mr. Kell stated that no entry is made in the Service's computer records when the IRS sends a statutory notice of deficiency to a taxpayer by registered or certified mail. However, the IRS office that issues a statutory notice keeps a record of the statutory notices that it sends on any given day in a certified mail log.[3] Entries appearing in such a certified mail log include the taxpayer's name and the address to which the notice was mailed.

27. As a Suit Advisor, Spencer Kell has access to the books, records, and other data concerning Delores Johnson that the Internal Revenue Service maintains in the ordinary course of its business. Mr. Kell testified that he regularly requests records pertaining to taxpayers from the IRS's Fresno Service Center and that he had reviewed the Service's administrative files pertaining to the plaintiff.

28. During the trial, Spencer Kell verified that defendants' Exhibit Nos. 100 through 109 came from the Internal Revenue Service's administrative files pertaining to the plaintiff. Mr. Kell also explained the meaning of various codes that appeared on the literal transcripts of account that defendants submitted as Exhibit No. 102.

29. Mr. Kell's testimony at trial was consistent in all respects with the statements that he made in his declaration. Mr. Kell made the following statements in his declaration and/or at trial concerning this case:

a. The records of the IRS indicate that the plaintiff failed to timely file an income tax return for the year 1987 and that the Service made several unsuccessful attempts to secure a return for that year from plaintiff. (Exhibit No. 100, Certificate of Assessments and Payments, entries dated 07/05/89, 08/07/89, 12/18/89, 06/16/90, 08/27/90 and 09/17/90). The records of the Internal Revenue Service indicate that the IRS did not receive a 1987 return from the taxpayer until August 12, 1993.

b. The only return that the Internal Revenue Service posted to the taxpayer's 1987

---

**3.** The document that the IRS maintains in order to establish that notices of deficiency have been sent to taxpayers actually is called a "certified mailing list." Therefore, references herein to "certified mail log" mean "certified mailing list."

tax account prior to August 12, 1993 was a substitute (or "dummy") return that the Service prepared for the taxpayer pursuant to 26 U.S.C. § 6020(b). (Exhibit No. 101). The Certificate of Assessments and Payments reflects that the IRS filed the substitute return on September 17, 1990. (Exhibit No. 100, entry dated 08/13/90 reflecting a $0.00 assessment on 09/17/90; *see also* Exhibit No. 102, entry dated 09/17/90 entitled "NO RETURN FILED SUBSTITUTE FOR RETURN").

c. The IRS prepared a substitute or "dummy" 1987 return for plaintiff because she had failed to file a return despite repeated requests to do so. The substitute return contains only plaintiff's name, social security number, filing status, and number of exemptions. The IRS prepares substitute returns as an administrative mechanism in order to facilitate the collection of tax liabilities for which a taxpayer has failed to file a return.

d. The 1987 tax assessment was based upon a deficiency that the Service determined was due and owing from plaintiff. On March 4, 1993, the IRS sent plaintiff a statutory notice of deficiency for the 1987 tax year. (Exhibit No. 103). In the statutory notice, the Commissioner of Internal Revenue determined that a tax deficiency in the amount of $91,471.41 was due and owing from plaintiff, plus various additions to tax.

e. At trial, Mr. Kell testified that defendants' counsel had not requested him to obtain a copy of the certified mail log from the IRS's Fresno Service Center, which would conclusively prove that the IRS had mailed the 1987 notice of deficiency to plaintiff by certified mail on March 4, 1993. Nevertheless, Mr. Kell testified that it is the standard practice of the IRS to mail a notice of deficiency to the taxpayer by certified mail and to place a copy of the notice that actually was mailed in the taxpayer's administrative file.

In Mr. Kell's opinion, the IRS mailed the 1987 notice of deficiency to plaintiff by certified mail on March 4, 1993. Kell based his opinion on the facts that plaintiff's 1987 administrative file contains a copy of a notice of deficiency properly addressed to plaintiff and date-stamped March 4, 1993 and that it is the Service's regular practice to send a notice of deficiency to the taxpayer by certified mail.

f. On March 12, 1993, the IRS Service Center in Fresno, California received a letter from plaintiff dated March 10, 1993, with attachments. (Exhibit No. 104). Included among the attachments to the March 10, 1993 letter was a form that plaintiff executed on March 10, 1993, consenting to the assessment of the tax deficiency and additions to tax listed in the "Report of Individual Income Tax Examination Changes" dated December 3, 1992. (Exhibit No. 104, p. 4).[4] During the trial, plaintiff testified that she signed the consent form and mailed it to the IRS on or about March 10, 1993.

g. On April 26, 1993, the IRS assessed the 1987 income tax deficiency and additions to tax against plaintiff, in accordance with the consent form that plaintiff executed on March 10, 1993. On that same date, the IRS notified plaintiff of the 1987 deficiency assessment and demanded payment of the assessed amount (i.e., $190,836.97). (Exhibit No. 100, entry dated 04/26/93 entitled "First notice issued"). The Court finds that the "tax return" referred to in Exhibit No. 100 refers to either the consent form or employer reports.

h. On May 15, 1993, plaintiff's tax practitioner, Robert J. Greenwald, wrote a letter to the Internal Revenue Service in Fresno, California, requesting information as to the basis of the 1987 deficiency assessment that had been made against plaintiff. A copy of the computer generated letter dated April 26, 1993 that the IRS had sent to plaintiff, notifying her of the 1987 deficiency assessment

---

4. The operative language of the consent form that plaintiff executed is as follows:

"CONSENT TO ASSESSMENT AND COLLECTION—I DO NOT WISH TO EXERCISE MY APPEAL RIGHTS WITH THE INTERNAL REVENUE SERVICE OR TO CONTEST IN THE UNITED STATES TAX COURT THE FINDINGS IN THIS REPORT. THERE-

FORE, I GIVE MY CONSENT TO IMMEDIATE ASSESSMENT AND COLLECTION OF ANY INCREASE IN TAX AND PENALTIES, AND ACCEPT ANY DECREASE IN TAX AND PENALTIES SHOWN ABOVE, PLUS ADDITIONAL INTEREST AS PROVIDED BY LAW."

and demanding payment of the amounts assessed, was attached to the May 15, 1993 letter. The IRS received that letter and attachments on May 21, 1993. (Exhibit No. 105).

i. In a letter dated July 15, 1993, IRS Tax Examiner Janet Guerra responded to Mr. Greenwald's letter dated May 15, 1993. (Exhibit No. 106, p. 2). The second paragraph of the July 15, 1993 letter explains that the IRS had made the assessment for 1987 on the following basis:

"Since we did not receive a response from you when we previously asked you to file your Form(s) 1040, we figured your tax and proposed penalties based on the income reported to us by your payers."

j. In a letter to the IRS dated August 5, 1993, Mr. Greenwald transmitted copies of the Service's letter dated July 15, 1993 and plaintiff's 1987 income tax return. Mr. Greenwald stated in his August 5 letter that "[w]e now see [what] the problem is, that maybe you never got the copy of the 1987 return." The IRS received Greenwald's letter dated August 5, 1993, including attachments, on August 12, 1993. (Exhibit No. 106).

k. Both the Certificate of Assessments and Payments and the literal transcripts of account contain entries dated August 12, 1993, entitled "Amended Return posted" or "Amended Return." (Exhibit Nos. 100 and 102). Those entries indicate that the IRS received a 1987 return from the taxpayer on August 12, 1993. In addition, the face page of the 1987 return that the IRS received from plaintiff (Exhibit No. 106, p. 3) bears the date stamp of "AUG 12, 1993." Therefore, the Service's records indicate that the taxpayer did not file her 1987 return until August 12, 1993.

l. On October 21, 1993, the IRS accepted as filed the 1987 return that plaintiff had filed on August 12, 1993. (Exhibit No. 106, p. 3, "ACCEPTED AS FILED" stamp on face page of the return). For that reason, on or about March 28, 1994, the IRS abated the excessive amounts of income taxes, penalties and interest that it had assessed against plaintiff for 1987. (Exhibit Nos. 100 and 102).

m. The tax assessments against the plaintiff for the years 1992 and 1993 are based upon the tax liabilities that the plaintiff reported as due and owing on returns that she timely filed with the IRS. (Exhibit Nos. 100 and 102, entries entitled "Return Filed and Tax Assessed"). Plaintiff reported adjusted gross income and taxable income in the amounts of $55,642.00 and $28,348.00, respectively, and total tax in the amount of $4,249.00 on her 1992 return. (Exhibit 107). Plaintiff reported adjusted gross income and taxable income in the amounts of $63,335.00 and $32,584.00, respectively, and total tax in the amount of $5,273.00 on her 1993 return. (Exhibit 108).

n. Even though the plaintiff ultimately owed income taxes for both 1992 and 1993, she did not have *any* income taxes withheld from her salary or wages during those years. (Exhibit Nos. 100, 102, 107 and 108).

30. On November 9, 1994, the Court filed an Order entitled "Order to Schedule Hearing on Issue of Actual Notice of Statutory Notice of Deficiency." In that Order, the Court stated that the presence in the IRS's administrative files of a copy of the notice of deficiency dated March 4, 1993 addressed to plaintiff at 5758 Chestnut Avenue, Long Beach, California 90805–4052 (hereafter "Chestnut Avenue address"), was the only proof defendants offered at trial or in a Post–Trial Memorandum filed on October 25, 1994 that plaintiff had actually received the notice of deficiency for 1987; and, that the Court found that showing to be "woefully inadequate" to prove "beyond contention that the taxpayer has received all of the information that would be furnished by receipt of the notice of deficiency itself." *See McKay v. Commissioner of Internal Revenue,* 886 F.2d 1237, 1239 (9th Cir.1989); *Gibson v. United States,* 761 F.Supp. 685, 689 (C.D.Cal.1991). For that reason, the Court ordered defendants either to produce appropriate evidence proving that the notice of deficiency was sent by registered or certified mail to plaintiff's last known address in a timely fashion (i.e., the certified mail log of the IRS); or, in the alternative, to prove beyond contention that plaintiff received actual notice. In the No-

vember 9, 1994 Order, the Court set a briefing schedule and a hearing for November 28, 1994 at 1:30 p.m. on the issue of whether the IRS met its notice obligations under 26 U.S.C. §§ 6212 and 6213.

31. On November 4, 1994, plaintiff filed a Motion for a New Trial, or Alternatively, to Alter or Amend the Judgment (hereafter "Motion for New Trial"), which also was set for hearing on November 28, 1994 at 1:30 p.m.. Plaintiff raised two main arguments in her Motion for New Trial. First, that the waiver form that plaintiff signed on March 10, 1993, consenting to the "immediate assessment and collection" of her 1987 income tax deficiency is not valid because it was not endorsed by an authorized Internal Revenue Service employee on behalf of the IRS District Director. Second, that the defendants have failed to meet their burden of proving "beyond contention that the taxpayer has received all of the information that would be furnished by receipt of the [1987] notice of deficiency itself." *See McKay v. Commissioner of Internal Revenue, supra,* 886 F.2d at 1239; *Gibson v. United States, supra,* 761 F.Supp. at 689.

32. In their opposition to plaintiff's Motion for a New Trial, defendants argued that the consent form that plaintiff executed on March 10, 1993 is valid and binding for all purposes and that it was not required to be countersigned by the IRS. Consequently, defendants asserted that even if the Court were to find that the IRS did not mail a notice of deficiency for 1987 to plaintiff by certified or registered mail *and* that plaintiff did not actually receive that notice, the Service's 1987 deficiency assessment against plaintiff still was proper. *See* 26 U.S.C. § 6213(d).

33. On November 16, 1994, defendants filed a document entitled "Declaration of Spencer Kell and Submission of Certified Mailing List of IRS Pertaining to 1987 Notice of Deficiency Mailed to Plaintiff Delores Johnson," pursuant to the Court's November 9, 1994 Order. In his declaration, Mr. Kell states that on or about October 26, 1994, he requested a copy of the Certified Mailing List from the Fresno Service Center pertaining to the statutory notice of deficiency dated

March 4, 1993 for the tax year 1987 that is found in the IRS's administrative files pertaining to Dolores Johnson. The certified mail article number of "P 911 142 771" appears in the center and near the top of the face page of the notice of deficiency. The notice of deficiency was addressed as follows: "Dolores Johnson, 5758 Chestnut Ave, Long Beach, CA 90805-4052-584."

34. Attached as Exhibit B to the Kell Declaration was a true and correct copy of the Department of Treasury, Internal Revenue Service, Audit Division's Certified Mailing List, page 62, regarding statutory notices of deficiency mailed to taxpayers on March 4, 1993, certified by the Fresno Service Center on November 15, 1994. Pursuant to the provisions of 26 U.S.C. § 6103, the names, social security numbers and street addresses of taxpayers other than Dolores Johnson who appear on page 62 of the Certified Mailing List were redacted. Dolores Johnson appears on line number 4 of page 62 of the Certified Mailing List dated March 4, 1993. The Certified Mailing List indicates that the Fresno Service Center mailed a notice of deficiency to Dolores Johnson for the tax year 1987 by certified mail as Article No. P 911 142 771 on March 4, 1993. That notice of deficiency was addressed as follows: "Dolores Johnson, 5758 Chestnut Ave, Long Beach, CA 90805-4052-584."

35. Any conclusion of law deemed more appropriately to be a finding of fact is incorporated herein as a finding of fact.

### CONCLUSIONS OF LAW

#### Subject Matter Jurisdiction

1. This Court has jurisdiction to determine whether it has subject matter jurisdiction over this action. *See United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

2. Plaintiff asserts that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 2410 because the IRS allegedly failed to issue a notice of deficiency before assessing her 1987 Federal income tax liability. That argument, however, must be rejected, since "claims that the IRS failed properly to notice deficiencies address the merits of an

assessment and therefore are not actionable under § 2410." *Huff v. United States,* 10 F.3d 1440, 1445 (9th Cir.1993), *citing, Elias v. Connett,* 908 F.2d 521, 527 (9th Cir.1990).

3. Under 26 U.S.C. § 7421, the Anti–Injunction Act, this Court has no subject matter jurisdiction over actions to enjoin the assessment and collection of tax, except as expressly provided in several other sections of Title 26. For example, 26 U.S.C. § 6213(a) gives the taxpayer the right to enjoin the assessment or collection of tax if the IRS fails to timely issue a statutory notice of deficiency. *Jensen v. I.R.S.,* 835 F.2d 196, 198 (9th Cir.1987); *Gibson v. United States, supra,* 761 F.Supp. at 688 ("where a taxpayer alleges a failure of notice [under 26 U.S.C. §§ 6212(a) and 6213(a) ], the court has subject matter jurisdiction over the suit unless and until the court determines that the IRS has satisfied its notice obligations"). An injunctive action under Section 6213 is the appropriate and sole remedy available to a taxpayer who wishes to challenge the assessment or collection of taxes because of an alleged failure to issue a notice of deficiency. *Guthrie v. Sawyer,* 970 F.2d 733, 736 (10th Cir.1992).

4. Plaintiff's contention that the IRS assessed her 1987 income taxes outside the three-year statute of limitations for assessment prescribed by 26 U.S.C. § 6501(a), if proven, would state a claim for relief under 26 U.S.C. § 6213, provided that plaintiff otherwise established entitlement to injunctive relief.

■ 5. The resolution of this case primarily depends upon whether plaintiff filed her 1987 return with the IRS on September 11, 1989, as plaintiff testified; or, whether plaintiff did not file her 1987 return until August 12, 1993, as reflected by the Service's records. If the Court were to find that plaintiff filed her 1987 return on September 11, 1989, then it would have subject matter jurisdiction

over plaintiff's claim for injunctive relief pursuant to 26 U.S.C. § 6213(a). Similarly, the Court would have subject matter jurisdiction if defendants cannot prove "beyond contention" that the IRS sent a statutory notice of deficiency for 1987 to plaintiff by certified or registered mail at her last known address *and* that the waiver of the restrictions on the assessment and collection of the 1987 tax deficiency that plaintiff executed is invalid. The Court, however, could not enjoin the Service from collecting plaintiff's 1987 tax liability unless plaintiff established the traditional prerequisites for equitable relief, i.e., irreparable harm and the absence of an adequate legal remedy. *See Jensen v. I.R.S., supra,* 835 F.2d at 198; *Gibson v. United States, supra,* 761 F.Supp. at 688.

## Statutory Scheme for Assessment and Collection of Taxes

6. Section 6201(a) of the Internal Revenue Code (26 U.S.C.) and the Treasury Regulations promulgated thereunder (Treas.Reg. § 301.6201–1(a)(1), 26 C.F.R.) provide that the Internal Revenue Service is authorized and required to assess all taxes (including interest, additional amounts, additions to tax and penalties) shown on a return filed by the taxpayer.

7. Code Section 6203 provides that "[t]he assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with the rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment."

8. If it is determined that a tax "deficiency" [5] is due and owing from the taxpayer, the "Secretary" [6] or his delegate is authorized to send a notice of such deficiency to the taxpayer by certified or registered mail "at his last known address." *See* 26 U.S.C. §§ 6212(a) and 6212(b)(1). [7] Under Section

---

**5.** *See* 26 U.S.C. § 6211 for a definition of the term "deficiency."

**6.** 26 U.S.C. § 7701(a)(11) provides that the term "Secretary," when used in Title 26, means "the Secretary of Treasury or his delegate."

**7.** Those subsections provide in full as follows:

**Sec. 6212. Notice of Deficiency.**
**(a) In general.**
  If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43 or 44, he is authorized to send notice of such deficiency

6213(c) of the Code, if a taxpayer does not file a petition in Tax Court within 90 days of the issuance of a statutory notice of deficiency, the Internal Revenue Service is authorized to assess the amount of the deficiency.

9. In addition, Code Section 6213(d) provides that "[t]he taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency."[8] Although the Court has not been able to locate any authority directly on point, it finds that a notice waiving the restrictions on assessment and collection pursuant to Section 6213(d) is not valid unless it is executed by the taxpayer before the expiration of the statute of limitations on assessment prescribed by Section 6501. *See e.g.,* 26 U.S.C. § 6501(c)(4).[9]

10. Section 6303(a) of the Code provides that after taxes are assessed against a taxpayer, the IRS must notify the taxpayer of the unpaid tax, state the amount due, and demand payment. Section 6321 of the Code provides that if any person liable for any assessed tax neglects or refuses to pay it after demand, the amount (including interest, penalties, etc.) shall be a lien in favor of the United States on all property and rights to property, both real and personal, belonging to such person. Section 6322 of the Code provides that unless another date is specifically fixed by law, the lien arises at the time the tax is assessed and continues until it is satisfied or becomes unenforceable by reason of lapse of time. 26 U.S.C. §§ 6323(a) and (f) authorize the IRS to file notices of Federal tax liens against delinquent taxpayers in the place designated by state law where the property subject to the lien is situated.

11. Section 6331(a) of the Code provides that if any person liable to pay tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful to collect such tax by levy upon all property and rights to property belonging to such person or on which there is a lien for the payment of such tax. Levy may be made upon the taxpayer's "salary, wages or other property" only if the Internal Revenue Service notifies the taxpayer of its intention to levy at least 30 days before the day of the levy. 26 U.S.C. § 6331(d).

12. 26 U.S.C. § 6501(a) provides that the IRS must assess taxes within three years after a tax return is filed. While the Service's preparation of a substitute 1987 return for plaintiff is "prima facie good and sufficient for all legal purposes" (26 U.S.C. § 6020(b)(2)), it has no effect upon the statute of limitations for assessment. *See* 26 U.S.C. § 6501(b)(3); *In re Bergstrom,* 949 F.2d 341 (10th Cir.1991); *Lowrie v. United States,* 162 B.R. 864, 73 A.F.T.R.2d 94–1059, 1060 (RIA) (Bankr.D.Nev.1994).

### Merits of the Case

■ 13. Two competing presumptions appear to be applicable in the instant case. First, under the common law mailbox rule, the proper and timely mailing[10] of a docu-

---

to the taxpayer by certified mail or registered mail.
(b) **Address for notice of deficiency.**
(1) **Income and gift taxes and certain excise taxes.** In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, or chapter 44 if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, chapter 44, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

8. 26 U.S.C. § 6213(a) generally prohibits the IRS from assessing a deficiency during the 90 day period that a taxpayer may file a petition for redetermination of the deficiency with the Tax Court and until the decision of the Tax Court has become final.

9. Section 6501(c)(4) provides, in pertinent part, as follows:

"Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, * * * both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon."

10. In this case, plaintiff admittedly did not mail her 1987 return to the IRS until at least September of 1989, approximately *thirteen months late* (the Certificate of Assessments and Payments in-

ment raises a rebuttable presumption that it was received by the addressee. *Rosenthal v. Walker*, 111 U.S. 185, 193–94, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1884); *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932). *See also Jones v. United States*, 226 F.2d 24, 26 (9th Cir.1955) (where the United States did not contest the taxpayers' testimony that they had timely and properly mailed amended returns to the IRS, the Ninth Circuit held that the presumption of delivery to the addressee arising from "positive proof of proper mailing" overcame the presumption arising from proof that the Government's search for the mailed matter failed to reveal that it had been received).

■ 14. Second, defendants have produced substantial evidence regarding the Service's non-receipt of plaintiff's 1987 tax return. That evidence includes the following: (1) entries on the Certificate of Assessments and Payments (Exhibit No. 100) as to the date that the IRS first received a 1987 return from plaintiff (i.e., August 12, 1993);[11] (2) the Service's mailing of numerous letters to plaintiff on various dates from July 5, 1989 to September 17, 1990 requesting that she file her 1987 return (Exhibit No. 100); (3) the IRS's preparation of a substitute return for plaintiff on August 13, 1990 (Exhibit Nos. 100–103); (4) statements in correspondence from the IRS to plaintiff indicating that plaintiff had not filed a 1987 return (Exhibit No. 104, p. 2, Examination Report dated December 18, 1992; Exhibit No. 106, p. 2, letter to plaintiff dated July 15, 1993); and (5) the testimony of Spencer Kell regarding the above enumerated matters.

■ 15. A taxpayer may rely upon extrinsic evidence, i.e., evidence other than a postmark or postal receipt for registered or certified mail, in order to prove the date on which she mailed a return or other document to the IRS. *See Anderson v. United States*, 966 F.2d 487, 490–91 (9th Cir.1992) (the taxpayer's testimony that she saw a postal clerk postmark her return and place the envelope in the mailing pouch and the testimony of the taxpayer's friend that the taxpayer returned to her car from the post office empty handed, i.e., without the envelope that contained the return, was sufficient to permit the taxpayer to prove that she had timely filed her return based upon the timely mailing of that return, pursuant to 26 U.S.C. § 7502).

16. Therefore, this case reduces to a credibility contest between plaintiff and defendants as to the date on which plaintiff filed her 1987 tax return. *See Anderson v. United States, supra,* 966 F.2d at 492 (the district court's conclusion that the Government failed to rebut the presumption of delivery arising from the common law mailbox rule by producing records of non-receipt of the mailed document was a "credibility determination").

■ 17. Based upon its review of all the evidence, the Court finds and concludes that plaintiff has failed to sustain her burden that she filed her 1987 Federal income tax return with the IRS on September 11, 1989. Plaintiff offered no proof, aside from her uncorroborated testimony, that she mailed her 1987 return to the IRS in September of 1989. No one was with plaintiff when she allegedly mailed her 1987 return to the IRS. Plaintiff also offered no proof as to whether or when she filed her 1987 income tax return with the State of California. Furthermore, the declaration and testimony of Ted Freedman was not helpful in determining when plaintiff mailed her 1987 return to the IRS. Pursuant to his "usual practice," Freedman did not date plaintiff's 1987 return after he had signed the return as the tax preparer. Therefore, Freedman could not have known

dicates that plaintiff obtained an extension of time to file her 1987 return until August 15, 1988). Therefore, it is doubtful whether the common law mailbox rule even applies here.

11. Certificates of Assessments and Payments are admissible to prove the non-occurrence of an event that ordinarily would be recorded, such as the taxpayer's filing of a tax return. *United States v. Neff,* 615 F.2d 1235, 1241–42 (9th Cir. 1980), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018,

65 L.Ed.2d 1117 (1980) (in a criminal tax prosecution, the Ninth Circuit sustained the admissibility of a Certificate of Assessments and Payments, which indicated that the taxpayer had not filed returns during 1974 and 1975). *See also Espinoza v. Commissioner,* 78 T.C. 412, 421–22, 1982 WL 11163 (1982) ("Where there is a question as to whether the return was filed, the records of the IRS are an item of evidence").

when he handed the completed return to plaintiff. In any event, Freedman did not have any personal knowledge that plaintiff actually mailed the 1987 return he had prepared to the IRS.

18. The Court also was not impressed with plaintiff's credibility and demeanor while testifying. Plaintiff's explanations regarding why she had not timely filed her 1987 return; why she did not have any income taxes withheld from her wages during 1992 and 1993; and why she had mailed the "Affidavit" to the IRS shortly before she filed the Complaint were unsatisfactory. Moreover, it is apparent from the statements that plaintiff made in the Affidavit that she is opposed to the payment of Federal income taxes. Accordingly, plaintiff's testimony was not worthy of belief.

19. The Court further finds that August 12, 1993 was the first date that plaintiff filed her 1987 return with the Internal Revenue Service. This conclusion is amply supported by the documentary evidence that the Government introduced at trial and by the testimony of Spencer Kell, as outlined above in Findings of Fact Nos. 26 through 29, above. Mr. Kell was a credible and forthright witness.

20. The Court finds that the Commissioner of Internal Revenue duly sent a statutory notice of deficiency for 1987 to plaintiff by certified mail on March 4, 1993. Defendants have produced a certified copy of page 62 of the Certified Mailing List dated March 4, 1993,[12] which indicates that the IRS sent a notice of deficiency for 1987 to Delores Johnson by certified mail on that date. The Certified Mailing List reflects that the notice was mailed as article no. P 911 142 771 and addressed as follows: "Dolores Johnson, 5758 Chestnut Ave, Long Beach, CA 90805–4052–584." The copy of the notice of deficiency dated March 4, 1993, found in plaintiff's 1987 administrative file maintained by the IRS bears the same article number and address as that shown on the Certified Mailing List regarding plaintiff. Therefore, defendants have established "beyond conten-

tion" that the IRS satisfied its notice obligations under 26 U.S.C. §§ 6212 and 6213. *See McKay v. Commissioner of Internal Revenue, supra,* 886 F.2d at 1239; *Gibson v. United States, supra,* 761 F.Supp. at 689.

21. The Court also finds that plaintiff actually received the 1987 notice of deficiency on or about March 4, 1993. In this regard, the courts have created an actual notice (or receipt) exception to the requirement of 26 U.S.C. §§ 6212(a) and (b)(1) that the Internal Revenue Service send a notice of deficiency to the taxpayer's last known address by certified or registered mail. If the taxpayer actually does receive notice of deficiency by *some method of delivery,* the Commissioner's failure to comply with the authorization in section 6212(a) inviting the use of registered or certified mail proves to be a technical, but harmless violation. *See Mulvania v. Commissioner,* 769 F.2d 1376, 1378 (9th Cir.1985) (holding that "a notice of deficiency actually, physically received by a taxpayer is valid under section 6212(a) if it is received in sufficient time to permit the taxpayer, without prejudice, to file a petition to the Tax Court even though the notice is erroneously addressed"); *Clodfelter v. Commissioner,* 527 F.2d 754, 756 (9th Cir.1975) (holding that section 6212(a) deals only with those instances in which actual notice was not given or cannot be proved), *cert. denied,* 425 U.S. 979, 96 S.Ct. 2184, 48 L.Ed.2d 805 (1976); *Boren v. R.A. Riddell,* 241 F.2d 670, 672–74 (9th Cir.1957) (holding that essential purpose of statute was accomplished when taxpayer got actual notice in sufficient time to petition tax court despite technical violation of not using registered mail).

22. Spencer Kell testified at trial that it is the standard practice of the IRS to mail a notice of deficiency to the taxpayer by certified mail and to place a copy of the notice that actually was mailed in the taxpayer's administrative file. In Mr. Kell's opinion, the IRS mailed the 1987 notice of deficiency to plaintiff by certified mail on March 4, 1993. Kell based his opinion on the facts that plaintiff's 1987 administrative file con-

---

**12.** A Certified Mailing List is "highly probative," and is sufficient, in the absence of contrary evidence, to establish that a notice of deficiency was properly mailed. *United States v. Zolla,* 724 F.2d 808, 810 (9th Cir.), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984).

tains a copy of a notice of deficiency properly addressed to plaintiff and date-stamped March 4, 1993 and that it is the Service's regular practice send a notice of deficiency to the taxpayer by certified mail.

23. Plaintiff's actual receipt of the notice of deficiency also may be inferred from the facts that plaintiff received the Report of Individual Examination Changes dated December 3, 1992 (*see* Exhibit No. 104, pp. 2–4) and a computer-generated notice dated April 26, 1993 from the IRS, notifying her of the 1987 deficiency assessment and demanding payment of the amounts assessed (*see* Exhibit No. 105, p. 2). Both of those documents were sent to plaintiff at her Chestnut Avenue address.

■ 24. In any event, even if the Court were to find that the IRS did not mail the notice of deficiency for 1987 to plaintiff by certified or registered mail at her last known address *and* that plaintiff did not actually receive that notice, the Service's assessment of 1987 taxes against plaintiff still was proper. As set forth above, 26 U.S.C. § 6213(d) expressly permits the IRS to assess taxes against a taxpayer, "whether or not a deficiency notice has been issued," if the taxpayer consents to such assessment. The taxpayer may, *at any time,* waive the restriction on assessment normally imposed by 26 U.S.C. § 6213(a) and thereby relieve the Commissioner of Internal Revenue of the duty to send a notice of deficiency. *See United States v. Price,* 361 U.S. 304, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960) (construing section 272(d) of the 1939 Internal Revenue Code, the predecessor statute of 26 U.S.C. § 6213(d), the Supreme Court held that a waiver of the restrictions on the assessment and collection of taxes is fully effective, even if executed *prior* to the issuance of a notice of deficien-

cy). *See also Monge v. Smyth,* 229 F.2d 361, 368 (9th Cir.1956) (a waiver of the restrictions on the assessment and collection of taxes signed by the taxpayer effected a final determination of the deficiency, obviated the need for the IRS to send a notice of deficiency to the taxpayer, and precluded the taxpayer from seeking to enjoin the Service's collection of the agreed upon tax deficiency); *Kalil v. Enochs,* 295 F.2d 467, 469 (5th Cir.1961) (the taxpayers waived any right to petition the Tax Court when they executed a waiver on the restrictions against assessment and collection of taxes and the taxpayers thereafter had no right to compel the IRS to issue notices of deficiency to them); *Meridian Wood Products Co., Inc. v. United States,* 725 F.2d 1183, 1186 (9th Cir.1984) (dicta).

25. In her Motion for New Trial, plaintiff contends that the waiver form that she signed is a conditional, non self-executing waiver that required an endorsement on behalf of the IRS District Director. *See* Motion, pp. 8–9. To support that argument, plaintiff relies upon the following language that appears in the next to last paragraph of the waiver form:

"ALTHOUGH THIS REPORT IS SUBJECT TO REVIEW, YOU MAY CONSIDER IT AS YOUR NOTICE THAT YOUR CASE IS CLOSED IF YOU ARE NOT NOTIFIED OF AN EXCEPTION TO THESE FINDINGS WITHIN 45 DAYS AFTER A SIGNED COPY OF THIS REPORT OR A SIGNED WAIVER, FORM 870, IS RECEIVED BY THE DISTRICT DIRECTOR."

26. From the above language, the plaintiff would have the Court infer a countersignature requirement on the part of the Service.[13] However, neither the plain language of Section 6213(d) nor that of the subject

---

13. Plaintiff cites *Monge v. Smyth, supra,* 229 F.2d 361, for the proposition that waivers of the restrictions against the assessment and collection of taxes must be accepted by the Commissioner of Internal Revenue in order to be valid. Plaintiff's reliance on *Monge* is grossly misplaced because the waiver in that case was *expressly conditioned* upon acceptance by the Commissioner of Internal Revenue. For example, the waiver in *Monge* stated, *inter alia:* "This Offer of Waiver of Restrictions is subject to acceptance by or on behalf of the Commissioner of Internal Revenue,

on the basis of the adjusted liability as hereinabove proposed * ⊦ * " and "If this proposal is accepted by or on behalf of the Commissioner, the case shall not be reopened * * *." *Id.,* 229 F.2d at 364, fn. 2 (emphasis supplied) (reprinting entire text of the waiver at issue there). On the other hand, the waiver in the instant case contains no language that conditions the validity of the waiver on acceptance by the Commissioner. *Moreover, there is no place on the waiver form that plaintiff executed for the countersignature of an IRS representative.*

waiver imposes such a condition. To the contrary, the only conditional language that appears in the waiver that plaintiff signed is that it was "subject to review" and that plaintiff's case would be considered as closed if plaintiff was not notified of an exception to the findings shown on the waiver within 45 days after the District Director received the waiver from plaintiff. Plaintiff has offered no evidence whatsoever that the IRS notified her of an exception to the findings shown on the waiver within 45 days after the IRS received the waiver (or at any time thereafter). Instead, the IRS assessed the 1987 income tax deficiency that plaintiff had agreed to on April 26, 1993.

27. For the above reasons, the consent form that plaintiff executed on March 10, 1993 is valid and binding for all purposes. Consequently, the IRS was authorized to assess the 1987 tax deficiency when it received the signed waiver from plaintiff, and plaintiff's contention that the IRS failed to send a notice of deficiency to her is immaterial. *See* 26 U.S.C. § 6213(d).

28. The Court further finds that there is no impediment to the Internal Revenue Service's collection of the 1987 income tax liability from plaintiff, since the IRS assessed that liability within three years of the date that plaintiff filed her 1987 return. Therefore, plaintiff is not entitled to a permanent injunction against defendants with respect to the collection of her 1987 income tax liability.

29. Finally, even if the Court were to find that the Service's 1987 tax assessment against plaintiff is time barred, plaintiff still would not be entitled to injunctive relief, since plaintiff failed to introduce any evidence that she would suffer irreparable harm and that she has no adequate legal remedy.

30. For the reasons set forth above, plaintiff's complaint and action shall be dismissed on the merits, with prejudice, and plaintiff shall take nothing by way of her complaint.

31. Accordingly, Judgment shall be entered against plaintiff and in favor of defendants in this action.

32. Any finding of fact deemed more appropriately to be a conclusion of law is incorporated herein as a conclusion of law.

### ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL, OR ALTERNATIVELY, TO ALTER OR AMEND JUDGMENT

The hearing on plaintiff Delores Johnson's Motion for a New Trial, or Alternatively, to Alter or Amend the Judgment (hereafter "Motion for New Trial"), came on for hearing before the Court, the Honorable Stephen V. Wilson, United States District Judge, presiding on November 28, 1994 at 1:30 p.m. in Courtroom "6," 312 North Spring Street, Los Angeles, California. Plaintiff Delores Johnson appeared in *propria persona* in support of the Motion for New Trial and Richard G. Stack, Assistant United States Attorney, appeared on behalf of the defendants in opposition to said Motion.

Based upon the papers filed by the parties, the arguments made at the hearing, all matters properly part of the record and good cause appearing therefor,

**IT IS ORDERED, ADJUDGED AND DECREED** that:

Plaintiff Delores Johnson's Motion for New Trial is hereby denied.